# Moore et al. v. State Board of Charities and Corrections et al.

(Decided June 19, 1931.)

GUY H. BRIGGS and ALLEN PREWITT for appellants.

J. W. CAMMACK, Attorney General, S. H. BROWN and HOWARD GENTRY, Assistant Attorneys General, LESLIE W. MORRIS and H. W. BATSON for appellees.

TRABUE, DOOLAN, HELM & HELM, amici curiæ.

730

This suit was brought to test the constitutionality of chapter 149 of the Acts of 1930, now sections 4202a-1 to 4202a-12 of the 1930 Supplement to Carroll's Statutes, and popularly known as the Gross Sales Tax Law. The suit was brought by the appellant Forrest Moore as a general taxpayer. In his petition, he averred that, relying on so much of the act as appropriates to it one-half of the proceeds of the gross sales tax, less collection costs, for the purpose of "repairing, maintaining and constructing" permanent improvements for the use of the institutions under its control, the state board of charities and corrections had entered into a contract with F. M. Perkins, the owner of a tract of land adjoining that upon which the state reformatory at Frankfort stands, whereby Perkins agreed to convey that tract to the state board of charities and corrections for the sum of $24,000, it being expressly agreed in the contract that this consideration was to be payable only out of the board's revenue arising from the collection of the gross sales tax. In the event this law should be declared unconstitutional, the contract provided that either party should have the right to terminate it. Pending the determination of that question, the state board of charities and corrections agreed by the terms of the contract to pay as rental for the use of the land a sum equal to 5 per cent. of the purchase price. It was and is the intention of the board to erect upon this land an addition to the state reformatory. Further alleging that the board was threatening to carry out this contract by using its general funds which it intended to reimburse later out of its part of the collections from the gross sales tax, Moore prayed that the board be enjoined from going ahead with the contract. He based his prayer mainly on the unconstitutionality of the Gross Sales Tax Law. The trial court upheld the constitutionality of the act, the right of the board to anticipate its revenues from the tax and its power to buy the land with part of the proceeds of the gross sales tax. Moore appealed. We reversed the judgment of the court solely on the ground that the record failed to show that Moore was one of the class of taxpayers who would have to pay the gross sales tax if that law were upheld, and that a decision on the constitutionality of that law should not be had without some taxpayer who would have to

pay the tax being made a party. Moore v. State Board of Charities and Corrections, 238 Ky. 243, 37 S. W. (2d) 41. On return of the case to the circuit court, the appellant D. T. Bohon Company, a corporation operating a number of retail stores in the state and one of the class of taxpayers who will have to pay the gross sales tax if that law be held constitutional, was made a party defendant to the suit. On being made such, it filed its answer and cross-petition against the state board of charities and corrections, the state auditor, and the state tax commission, in which it asked relief against these cross-defendants similar to the relief asked by Moore in his petition. The real basis of the Bohon prayer for such relief is the unconstitutionality of the Gross Sales Tax Law. The defendants in the Moore suit and the cross-defendants in the Bohon cross-petition, they being the same, joined issue with Moore and the Bohon Company as to the constitutionality of the act. After proof had been introduced, the case was submitted and the trial court again upheld the constitutionality of the Gross Sales Tax Law, adjudged the state board of charities and corrections had the right to anticipate its revenues from the gross sales tax in carrying out the Perkins contract as it was doing, held that the right to purchase land upon which to erect permanent improvements was within the powers vested in the board by the Gross Sales Tax Act, and also adjudged that, by the terms of the act, the state had given its consent to be sued, not only in the state, but also in the federal courts by any aggrieved taxpayer of the gross sales tax to adjust, after he had paid the tax, any grievance he had arising out of the collection of such tax. From this judgment Moore and Bohon have both appealed.

That the state board of charities and corrections, under the power given it by section 9 of the act to use its part of the gross sales tax for "the specific purpose of repairing, maintaining and constructing permanent improvements," has the right to expend part of the proceeds of such tax in the purchase of land upon which to erect an addition to the state reformatory is clear to us. It is necessary, in order to erect this addition to the state reformatory, that additional land be purchased, for there is no available room upon the present site of the reformatory for the addition planned. The addition itself is a permanent improvement, and the Legislature undoubtedly intended that the board should have the power and

right to expend the funds given it by this section 9 of the act in the purchase of all things needful in the construction of permanent improvements, and, if land be needed for that purpose, then also, the right to buy such land for the erection and completion of the improvement.

We are further of the opinion that, inasmuch as the probable collections from the gross sales tax can be reasonably calculated and ascertained, the state board of charities and corrections has the right to include within its budget of expenditures the estimated revenue it will receive from this source. Premier Construction Co. v. Kimmell, 230 Ky. 439, 20 S. W. (2d) 77. It follows, therefore, that the board had the right to make the contract it did with Perkins and to carry it out as it was proposing to do if the Gross Sales Tax Law itself be constitutional.

The attack made by the appellants upon the constitutionality of that act is based upon these grounds: (1) It denies the equal protection of the law to the various classes of taxpayers who come within its purview; (2) it is confiscatory; (3) it violates the commerce clause of the federal Constitution; and (4) its title does not comply with the requirements of section 51 of our state Constitution. As to this last proposition, appellants do not point out in what particular the title fails to measure up to the requirements of that section of our state Constitution, and, without more ado, we may say summarily that we are unable to discover any such failure.

We pass now to the more important grounds of attack upon the constitutionality of this act. Does it deny the equal protection of the law to the various classes of taxpayers who come within its scope? The standards by which this law is to be tested, in order that the question propounded may be answered, are well known and well established. Thus in the recent case of State Board of Tax Commissioners of the State of Indiana v. Jackson, 51 S. Ct. 540, 543, 75 L. Ed. —, which involved the right of the state of Indiana to impose a graduated occupational tax upon the operation of mercantile establishments measured by the number of stores operated, the Supreme Court of the United States wrote:

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the govern-

ment of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. Bell's Gap R. R. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; Southwestern Oil Co. v. Texas, 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; Brown-Forman Co. v. Kentucky, 217 U. S. 563, 30 S. Ct. 578, 54 L. Ed. 883. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102, or if any state of facts reasonably can be conceived to sustain it. Rast v. Van Deman, 240 U. S. 342, 36 S. Ct. 370, 374, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350. As was said in Brown-Forman Co. v. Kentucky, supra, at page 573 of 217 U. S., 30 S. Ct. 578, 580:

" 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses, or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'

"It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the Court make this abundantly clear."

The principles thus stated by the Supreme Court are those declared by us in the case of the City of Danville

734

v. Quaker Maid, 211 Ky. 677, 278 S. W. 98, 43 A. L. R. 590, where we wrote:

> "It is agreed that, where license tax is imposed upon a class of persons engaged in a particular business, trade, or occupation, then all persons engaged in such trade, occupation, or business are subject to the tax, and it must be uniform upon the class singled out for taxation. It is also agreed that persons engaged in the same trade, occupation, or business may be classified, and a different license tax imposed on each class, provided the classification is made upon a natural and reasonable basis. Commonwealth v. Payne Medicine Co., 138 Ky. 164, 127 S. W. 760; City of Louisville v. Sagalowski & Son, 136 Ky. 324, 124 S. W. 339, 136 Am. St. Rep. 258; Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195, 129 Am. St. Rep. 238; Brown-Foreman Co. v. Commonwealth, 125 Ky. 402, 101 S. W. 321, 30 Ky. Law Rep. 793; City of Carlisle v. Heckinger, 103 Ky. 381, 45 S. W. 358, 20 Ky. Law Rep. 74; City of Covington v. Dalheim, 126 Ky. 26, 102 S. W. 829, 31 Ky. Law Rep. 466; Read v. Graham, 102 S. W. 860, 31 Ky. Law Rep. 569; Gordon v. City of Louisville, 138 Ky. 442, 128 S. W. 327."

To the same effect is Young et al. v. City of Lexington, 235 Ky. 822, 32 S. W. (2d) 410.

Applying these principles to the provisions of the Gross Sales Tax Law and the facts adduced in evidence herein, we find that the tax levied by the act is by the terms of the act itself an excise or license tax imposed upon retail merchants for "the opening, establishing, operating or maintaining" any store or stores as defined in the act, the tax being measured by the amount of gross sales and being graduated as the amount of such sales increases. It is agreed that this tax is not levied under the police power as incidental to the regulation of businesses or occupations, but is an excise tax levied for revenue raising purposes. The act defines a retail merchant as:

> "Every person, firm, association, co-partnership or corporation opening, establishing, operating or maintaining any 'store,' as defined herein, for the purpose of and selling goods, wares or merchandise at retail in this State, except those actually engaged

in gardening or farming and selling garden or farm products raised by them in this State." Section 1.

The act further defines the term "store" as:

"Any store or stores or any mercantile establishment or establishments in this State which are owned, operated, maintained, or controlled by the same 'retail merchant,' as defined herein, either domestic or foreign, in which goods, wares or merchandise of any kind, are sold at retail." Section 1.

The act provides that its provisions shall apply:

"To every 'retail merchant,' and 'store,' as defined herein, which is controlled or held with others by majority stock ownership or ultimately controlled or directed by one management or association of ultimate management." Section 1.

The tax levied by the act is thus graduated:

"One-twentieth of one per cent. of the gross sales of Four hundred thousand ($400,000.00) Dollars or less; two-twentieths of one per cent. on the excess of the gross sales over Four hundred thousand ($400,000.00) Dollars and not exceeding Five hundred thousaid ($500,000.00) Dollars; five-twentieths of one per cent. on the excess of the gross sales over Five hundred thousand ($500,000.00) Dollars and not exceeding Six hundred thousand ($600,-000.00) Dollars; eight-twentieths of one per cent. on the excess of the gross sales over Six hundred thousand ($600,000.00) Dollars and not exceeding Seven hundred thousand ($700,000.00) Dollars; eleven-twentieths of one per cent. on the excess of the gross sales over ($700,000.00) Dollars and not exceeding Eight hundred thousand ($800,000.00) Dollars; fourteen-twentieths of one per cent. on the excess of the gross sales over Eight hundred thousand ($800,-000.00) Dollars and not exceeding Nine hundred thousand ($900,000.00) Dollars; seventeen-twentieths of one per cent. on the excess of the gross sales over Nine hundred thousand ($900,000.00) Dollars and not exceeding One million ($1,000,000.00) Dollars; one per cent. on the excess of the gross sales over One million ($1,000,000.00) Dollars." Section 2.

Section 4 of the act reads:

"The license or excise tax levied herein, shall not be in lieu of any special state license, excise, occupational or corporation license tax due under the provisions of any law now in force, or that may hereafter be enacted. Should any retail merchant, as defined herein, be liable for and pay any special state license, excise, occupational or corporation license tax under the laws now in force, or that may hereafter be enacted, credit may be taken on the tax levied in this act for the amount of such special license, excise, occupational or corporation license tax so paid not to exceed the amount of the license or excise tax levied herein,"

The other provisions of the act have to do with the administration of the law and are not pertinent to the inquiry now before us.

It is contended that this act denies the equal protection of the laws to those who come within its sphere, first, because section 4 of the act creates an unjust discrimination in favor of the small retail merchants, in that their special license, excise, and occupational taxes are in many instances more than sufficient to render them exempt from the payment of the gross sales tax, and, further, because corporations are permitted to take credit for the corporation license taxes whereas individuals have no such opportunity.

The fact that the credits which small merchants are authorized to take may result in their having no tax to pay under this act does not work a denial of the equal protection of the laws. These credits are open to all who have special license, excise, or occupational taxes to pay. The large merchant gets credit exactly as does the small merchant. The tax of the large merchant is reduced exactly as is the tax of the small merchant. The complaint that the small merchant may by his credits escape paying any gross sales tax is really, when analyzed, the complaint that under the graduated tax the large merchant is taxed more in proportion to his gross sales than is the small merchant. To that complaint, we will presently address ourselves. Those who have no special license, excise, or occupational taxes to pay and no corporation license tax to discharge have no just complaint if those who do have such taxes to pay are given credit for them

against their gross sales. This puts no added burden upon those who do not have to pay special license, excise, occupational, or corporation license taxes. It simply tends to make competition fairer as between them and those who have such taxes to pay, since, in the last analysis, such taxes fall as a burden upon the gross sales. Cf. Greene v. E. H. Taylor, Jr., & Sons, 184 Ky. 739, 212 S. W. 925.

We come now to the complaint concerning the graduated feature of this tax. It is claimed that the tax is wholly arbitrary, and that its graduated feature based on the volume of business done works such a discrimination as between those who come within the different brackets as to deny those who are in the higher brackets the equal protection of the laws.

The power of classifying taxes upon business according to the volume of business done has always been upheld by this Court. Thus in Gordon v. City of Louisville, 138 Ky. 442, 128 S. W. 327, 328, we said:

"In this state we recognize as valid the imposition of license taxes based upon three theories: one being a uniform tax upon all persons engaged in the same business without any reference to the amount of business done, another that levies a uniform tax upon the volume of business done without changing it in the proportion that the business increases, the per cent. being the same whether there is realized from the business $1,000 or $100,000 per annum. And yet another is the division of a general class, as in this case and the Strater case [117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717] into separate classes according to the volume of business done, and the imposition of a different tax upon each division into which the class is divided. This last-mentioned scheme is, of course, open, as are all the others, to the objection of inequality; but the inequality is not any greater under this system than it is under the others. Of course, in selecting the line that divided the general class into subdivisions and taxing persons coming within the provisions of each subdivision a different rate, the divisional lines are necessarily arbitrarily selected by the authorities having power to enact the tax laws as is the tax that those in each division shall pay. But this fact alone is not sufficient to condemn the act as an

unwarranted exercise of legislative authority, if the tax levied upon each class is reasonable, and the lines dividing the class appear to have been made with reasonable regard for the rights of the persons engaged in the business that is thus divided.''

To the same effect are Young v. City of Lexington, supra; Strater Bros. Tobacco Co. v. Commonwealth, 117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717; Clark v. City of Titusville, 184 U. S. 329, 22 S. Ct. 382, 46 L. Ed. 569; and Metropolis Theater v. City of Chicago, 228 U. S. 61; 33 S. Ct. 441, 57 L. Ed. 730.

The state having, under the authorities, the right to classify in its taxation program and even to discriminate in favor of certain classes if the discrimination be founded upon a reasonable distinction, and classification according to the volume of business done being valid because based upon a reasonable distinction, if the tax levied be not confiscatory and the lines dividing the classes appear to have been made with reasonable regard for the rights of the persons engaged in the businesses that are thus divided, let us now turn to the evidence herein adduced to see if the conditions upon which such a classification may be validly based are fulfilled in this case. It is true the witnesses for the appellants say that the large retailer, whether operating chain stores, a department store, or just a specialty store, is in intense competition with the smaller dealer, but they do not successfully combat the evidence of the appellees to the effect that advantages in unified and superior management, manifesting itself in lower operating costs, greater efficiency in purchasing, buying for cash and thus obtaining cash discounts, warehousing goods, and distributing from a single warehouse to numerous stores, thus involving less liability for ad valorem taxes (since, as in the case of chain stores, there is no need for such a stock in any one store to be on hand on the assessment date as is required in an independent store), pricing and sales policy; greater rapidity of turnover, less advertising costs per store or department—all are those which the large retailer enjoys to his profit and which the small retailer does not enjoy. These advantages manifest themselves in both gross and net profits. Thus the proof establishes that the ratio of net gain either to sales or to capital invested is very much higher in the case of large-scale merchants than in that of the

small-scale ones whether the large-scale ones be of the chain store type or of the department store type, or even of the specialty store type.

It is true that, in the case of department stores, appellant's witnesses state that each department is in competition with small independent dealers who will not have to pay the gross sales tax, whereas the department's sales, because of being added to the sales of other departments, will have to bear its proportion of the gross sales tax, thus putting such department at a disadvantage in its competition with the independent dealer. But these witnesses overlook the advantages which the proof discloses that a department has in location of the store of which it is a department, its sharing with the other departments of overhead, of purchasing power, of obtaining discounts for cash, of advertising, of window display, of unified and superior management, all or most of which the average specialty store does not enjoy. The evidence further establishes that the small retailer pays a very much higher ad valorem tax per dollar of sales than does the larger merchant, and that the imposition of the gross sales tax graduated as it is tends to equalize as between the small and large retailer the tax burden per dollar of sales. The moderate amount of the graduated increase per class in the tax from one-twentieth of 1 per cent. in cases of sales of $400,000 or less to 1 per cent. of sales in excess of $1,000,000 being an increase of but two-twentieths of 1 per cent. for each additional $100,000 of sales after $500,000 cannot in the light of the evidence herein produced as to the increased ability to pay in proportion to greater volume of gross sales made be said to be arbitrary, or made without reasonable regard for the rights of the persons engaged in the classes thus divided. Indeed, the percentage of graduated increase in the tax is not as great as that sustained in Clark v. City of Titusville, supra. In the case of City of Newport v. Frankel, 192 Ky. 408, 233 S. W. 884, relied upon by appellants, with but an increase of 5 cents in the admission to theaters of a stated seating capacity, the license tax jumped from $450 to $5,000. Obviously such a jump could not be justified by the small increase in the price of admission. But here the jump amounts to but two-twentieths of 1 per cent. for each $100,000 of increase of gross sales. There is no such manifest injustice in this advance as there was in the Newport Case. The evidence supports the advance.

Nor does the evidence show that taken as a whole there is any confiscation arising out of the imposition of this tax. Excluding special license, excise, and corporation license tax cases, the effective rate on total gross sales expressed in fractions of 1 per cent. rises from .05 in cases of gross sales not exceeding $400,000 to .305 where such sales amount to $1,000,000. The percentage is .6525 where the gross sales amount to $2,000,000, but, from this point on, the curve of increase begins to flatten out. For $3,000,000 of gross sales, the percentage is .7683; for $4,000,000 it is .8263; for $6,000,000 it is .8842; for $9,000,000 it is .92278, and for $12,000,000 it is .94208. The evidence discloses that the average amount of profit in the case of these large retailers as a class (and we must gauge the law by how it operates on the class, not on some special individual, whether good or ill for him) is not less than 2 to 2½ per cent. of gross sales. It is highly doubtful under the evidence in this case whether the large retailer, because of his lower sales prices which he charges the public, cannot pass the tax laid upon him by this act on to the consumer and still be able to meet the competition of the small retailer and specialty store. The burden is upon him who attacks the constitutionality of a law, and it devolved upon appellants to show that the tax could not be shifted. But even if it be conceded that the tax must fall upon the large retailer, yet it cannot be said that, in the light of the percentage of profit per gross sales, this tax which, for practically all of these large retailers, will vary between the limits of .6525 and .94208, is confiscatory. It is not as large in the higher brackets as is the income tax levied by the United States government, and in the lower brackets it closely approximates such federal taxes. Indeed the evidence shows that whether considered from the point of view of the ratio of profit before gross sales tax to net worth as compared with the ratio of profit after gross sales tax to net worth, or the per cent. earned on property investment in Kentucky before the gross sales tax as compared with such per cent. after the gross sales tax or the per cent. earned on invested capital before the gross sales tax as compared with such percentage after the gross sales tax, the ratio of decrease caused by the operation of the gross sales tax is just about the same. Except in the case of one large chain store, the decrease in the cases of representative large retailers does not exceed the difference between the ratio of 32.67 per cent. and

that of 21.58 per cent. The application of the gross sales tax to these representative retailers leaves the largest scale enterprises still earning on the average 12.49 per cent., the second largest scale 11.61 per cent. and the third, 9.74 per cent. This is far from confiscation.

From what we have said, it follows that the tax is not unconstitutional because of any denial of the equal protection of the laws or because of alleged confiscation.

Does the act violate the commerce clause of the federal Constitution?

It is argued that it does, because in defining a retail merchant it exempts those "actually engaged in gardening or farming and selling garden or farm products raised by them in this State." Appellants say that under this definition the tax must be collected from those who raise their farm products elsewhere but bring them into this state to sell, which, being true, we have a tax laid on interstate commerce, a thing which the state cannot do. However, we are of the opinion that the phrase "in this state" was meant to modify the word "selling" and not the word "raised." The whole import of the act is the levy of a tax measured by sales made in this state. It is the sales which count, not the place where the goods sold are produced. It was plainly the purpose of the act to exempt from its operation those engaged in gardening and farming and selling their own products. Such sales the Legislature intended to be without the operation of the act, and it was of no moment to that body where the produce sold was raised. We must always presume that the Legislature intended to write a constitutional act and must construe its law with that end in view. With this principle controlling us, and being convinced that it was the sale the Legislature had in mind and not the place of production, we conclude that the act must be construed as to exempt those engaged in gardening and farming and selling in this state their own products no matter where grown. With this construction placed upon the act, the criticism of its constitutionality based upon the ground now urged falls.

We did not, in that part of this opinion dealing with the equal protection of the laws, discuss the exemption of farmers and gardeners from the operation of the act because it is settled that a classification such as this is

valid. Thus in Potter v. Dark Tobacco Growers' Co-Operative Association, 201 Ky. 441, 257 S. W. 33, 35, we said:

"The basis of this change in public opinion toward combination and classification is not in any sense political, but economic rather, and, in our judgment, it is because of basic economic conditions, affecting vitally not only the farmers, but also the public weal, that the classification based upon agricultural pursuits is reasonable, just, and imperative for the good of the entire nation and every citizen thereof."

Appellants further argue that, as the evidence establishes that many sales are made in stores located in the border counties to people who live in other states on orders received through the mail, telephone, and otherwise, and that many sales are made in such stores, especially the grocery stores, of goods in original packages that have been shipped in from other states, an excise tax such as this gross sales tax levied on such sales is a tax on interstate commerce which renders the act void. Illustrative of the cases cited to support this position are Crew Levick Co. v. Commonwealth of Pa., 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295, and Leisy v. Hardin, 135 U. S. 100, 10 S. Ct. 681, 34 L. Ed. 128. We are of the opinion, however, that the tax levied by this act was meant to be measured only by domestic sales and was not to be measured by any sales that could justly be classified as sales in interstate commerce. The words "retail merchant" are defined by the act as one who sells "at retail *in this State.*" (Italics ours.) This definition emphasizes the idea that it is the domestic sales and not those of an interstate character which the act aims to reach. In the case of Hope Natural Gas Co. v. Hall, 102 W. Va. 276, 135 S. E. 582, 583, there was involved the validity of an act of West Virginia levying a tax upon the gross proceeds derived by the producer from the sale of coal, oil, natural gas, limestone, sand, or other mineral product. The act was attacked on the ground that a large part of such products, especially natural gas, was sold in interstate commerce, and, as the act contained no express exceptions, it indicated a plain intention to tax the gross proceeds of sales in inter- as well as intra-state

commerce. The West Virginia court, in construing the act and disallowing the contention, said:

> "By the terms of the statute, the tax is to be calculated on the value of the article produced, and that value is to be shown by the gross proceeds of its sale. . . .
>
> "We are warranted in presuming that the Legislature did not mean to include, as an element of value, so much of the gross proceeds of the sale of an article in interstate commerce as is represented by the cost of transportation, and we restrain the operation of the statute accordingly. This presumption and this limitation are strengthened by the concluding sentence of the statute, whereby the measure of the tax is declared to be the value of the product in this state, regardless of place of sale or delivery outside of state. If the sale of a commodity produced in this state imposes on the seller delivery in another state, then the sale price necessarily includes the cost of the delivery. Such sale price would not reflect the worth of the commodity in the state, but the worth within the state plus the cost of transportation. If the taxation value of the products named in the statute be limited to their value in the state, and before they enter interstate commerce, the statute does not manifest a purpose to violate article 1 of the federal Constitution, and we so hold."

In affirming that case, the Supreme Court of the United States said (274 U. S. 288, 47 S. Ct. 639, 640, 71 L. Ed. 1049):

> "Counsel admit that without violating the commerce clause the state may lay a privilege or occupation tax upon producers of natural gas reckoned according to the value of that commodity at the well. American Mfg. Co. v. St. Louis, 250 U. S. 459, 39 S. Ct. 522, 63 L. Ed. 1084; Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; Oliver Iron Min. Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929. But they insist that, accepting the statute under consideration as construed by the highest court of the state, plaintiff in error will be subjected to an unlawful direct tax upon gross receipts derived from interstate commerce. This

argument rests chiefly upon certain language excerpted from the opinion below. But we review the final decree and must accept the statute as authoritatively construed and applied. The plain result of the opinion and final decree is to require that the tax be computed upon the value of the gas at the well, and not otherwise. If, hereafter, executive officers disregard the approved construction and fix values upon any improper basis appropriate relief may be obtained through the courts.''

We quoted this Hope Natural Gas Company case with approval in the case of Cumberland Pipe Line Co. v. Commonwealth, 228 Ky. 453, 15 S. W. (2d) 280, which also involved a question of statutory construction concerning this matter of alleged taxation of interstate commerce and in which we held that the intention of the Legislature was not to enact a law taxing interstate commerce.

The presumption always being that the Legislature did not intend to violate any provision of the federal Constitution, and the act by its definition of the words "retail merchant" plainly indicating that it was to be confined to domestic sales, we are of opinion that such sales as bear the character of interstate commerce were not meant to be and are not to be included in the amount of the gross sales by which the tax is to be measured. While a state may not by laying taxes regulate or burden interstate commerce in any form, yet whenever the subjects of taxation can be separated so that which arises from interstate commerce can be differentiated from what arises from commerce wholly within the state, the difference will be acted upon by the courts, and the state will be permitted to collect taxes upon commerce solely within its own territory. Lehigh Valley R. Co. v. Pennsylvania, 145 U. S. 192, 12 S. Ct. 806, 36 L. Ed. 672. In Crew Levick Co. v. Commonwealth of Pennsylvania, supra, while the taxpayer was released from the excise tax there involved in so far as it burdened interstate commerce, no question was made about his liability to pay so much of the tax as bore solely upon intrastate commerce. What sales are interstate and what are not will be determined when that question is presented. It is not presented by this record. The act, then, not being in violation of the commerce clause of the federal Constitution, and, as we have seen, not being unconstitutional on

the other grounds urged by the appellants, it follows that the judgment of the lower court in upholding the act is correct and should be affirmed.

We are of the opinion, however, that it was unnecessary, in view of what the lower court decided as to the constitutionality of the act, to determine whether the state had by section 10 of the act given its consent to be sued either in the state or federal court. That question will be decided when it is squarely presented for decision, which it is not in this case. The lower court's judgment should be modified by striking from it so much as adjudged that question. As so modified, the judgment is affirmed.

Whole court sitting.