**STEWART DRY GOODS CO. v. LEWIS et al.**

**LEVY et al. v. SAME.**

**J. C. PENNEY CO. v. SAME.**

**KROGER GROCERY & BAKING CO. v. LEWIS.**

Nos. 609–611, 3908.

District Court, W. D. Kentucky.
Dec. 20, 1933.

Trabue, Doolan, Helm & Helm, of Louisville, Ky., and Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, for plaintiffs.

Bailey P. Wootton, Atty. Gen., S. H. Brown, Asst. Atty. Gen., Batson, Cary & Welch, of Louisville, Ky., and Leslie W. Morris, of Frankfort, Ky., for defendants.

Before HICKS, Circuit Judge, and COCHRAN and DAWSON, District Judges.

DAWSON, District Judge.

These three cases are before us on final submission, and each of them involves the validity of chapter 149 of the 1930 Acts of the General Assembly of the commonwealth of Kentucky, commonly known as the Retail

Merchants' Gross Sales Tax Act. The case of Kroger Grocery & .Baking Company v. John B. Lewis et al., in the Eastern District of Kentucky, and involving the same questions, was heard and considered by us at the same time. On a former hearing of these cases we dismissed the petitions on the ground that the plaintiffs had an adequate remedy at law.[1] An appeal was taken to the Supreme Court, and that court held that, in view of the allegations of the bills as to the condition of the general expenditure fund of the state, it could not be said, in the absence of proof controverting the allegations of the bills, that section 10 of the act upon its face afforded an adequate remedy at law. In reversing the case, the court said (287 U. S. 9, 53 S. Ct. 68, 69, 77 L. Ed. 135) : "The degrees are reversed and the causes remanded to the District Courts, of three judges, for final hearing upon the merits, without prejudice to a determination upon evidence with respect to the questions of the status of outstanding warrants upon the general fund in the state treasury, and whether warrants of the sort contemplated by section 10 of the act in question are accorded preference in payment over other warrants and the basis, if any, for the assurance that such preference will be continued so that in the event of actions by the plaintiffs at law under section 10 they would be afforded a certain reasonably prompt and efficacious remedy."

We have interpreted this language of the court to authorize us to again consider the question of the adequacy of the remedy at law under section 10 of the act in the light of such proof as might be offered by the parties on this subject.

■ Proof has been taken on this question, which establishes the fact that the uniform practice of the treasurer of the commonwealth of Kentucky has been to pay warrants issued by the auditor for the refund of taxes when presented, and in advance of outstanding interest-bearing warrants, and that such has been the practice of the present treasurer of the commonwealth of Kentucky, whose term of office does not expire until January, 1936. It is further established by the evidence that the present state treasurer has followed the practice of keeping himself in financial position to refund all taxes which are paid under legal protest, and that he will be in a position to and will do so with reference to the taxes involved in these actions in event it shall be finally determined that such taxes were illegally collected, notwithstand-

ing the fact that there were outstanding as of June 30, 1933, approximately $15,000,000 of interest-bearing warrants against the general expenditure fund, out of which fund section 10 of the act directs refunds under the act to be made. We know of no opinion of the Court of Appeals of Kentucky giving its sanction to this practice, nor does the record disclose that the Attorney General of the state has ever ruled that the practice was authorized by any statute of the state. Certainly the practice is consonant with common justice; but, in view of the doubt expressed by the Supreme Court as to whether section 10 of the act authorizes such preferential treatment, and in view of the further fact that, if refunds under the act are not given preference, it is uncertain when they would be paid, we feel constrained to hold that the remedy at law given by section 10 of the act does not afford that certainty necessary to repel equity jurisdiction.

We therefore come to a consideration of the merits of the cases.

The pertinent provisions of the act are:

"§ 1. The words 'retail merchant,' as used in this act, shall mean and include every person, firm, association, co-partnership or corporation opening, establishing, operating or maintaining any 'store,' as defined herein, for the purpose of and selling goods, wares or merchandise at retail in this State, except those actually engaged in gardening or farming and selling garden or farm products raised by them in this State. The term 'store,' as used in this act, shall be construed to mean and include any store or stores or any mercantile establishment or establishments in this State which are owned, operated, maintained or controlled by the same 'retail merchant,' as defined herein, either domestic or foreign, in which goods, wares or merchandise of any kind, are sold at retail. The provisions of this act shall be construed to apply to every 'retail merchant' and 'store,' as defined herein, which is controlled or held with others by majority stock ownership or ultimately controlled or directed by one management or association of ultimate management.

"§ 2. Every retail merchant, as defined herein, shall pay an annual license tax for the opening, establishing, operating or maintaining of any store or stores, as defined herein, determined by computing the tax on the amount of gross sales as follows:

"One-twentieth of one per cent of the gross sales of Four hundred thousand ($400,-000.00) Dollars or less; two-twentieths of

[1] Not for publication.

one per cent on the excess of the gross sales over Four hundred thousand ($400,000.00) Dollars and not exceeding Five hundred thousand ($500,000.00) Dollars; five-twentieths of one per cent on the excess of the gross sales over Five hundred thousand ($500,000.00) Dollars and not exceeding Six hundred thousand ($600,000.00) Dollars; eight-twentieths of one per cent on the excess of the gross sales over Six hundred thousand ($600,000.00) Dollars and not exceeding Seven hundred thousand ($700,000.00) Dollars; eleven-twentieths of one per cent on the excess of the gross sales over Seven hundred thousand ($700,000.00) Dollars and not exceeding Eight hundred thousand ($800,000.00) Dollars; fourteen-twentieths of one per cent on the excess of the gross sales over Eight hundred thousand ($800,000.00) Dollars and not exceeding Nine hundred thousand ($900,000.00) Dollars; seventeen-twentieths of one per cent on the excess of the gross sales over Nine hundred thousand ($900,000.00) Dollars and not exceeding One million ($,1,000,000.00) Dollars; one per cent on the excess of the gross sales over One million ($1,000,000.00) Dollars.

"§ 3. Every retail merchant, as defined herein, in order to ascertain the amount of taxes due and payable under the next preceding section, shall file with the State Tax Commission on or before the first day of February each year a written report verified by the affidavit of the owner or chief officer on such forms as it may prescribe, giving the number and location of its store or stores, as defined herein, the name and post office address of its owner or principal officer, the name and address of its officer or agent in charge of its business at each separate store, the nature and kind of business; the total gross sales during the preceding year ending the thirty-first day of December, and such other facts bearing on the proper taxation as the Tax Commission may require.

"The State Tax Commission may, in any case, require such additional information as it may deem necessary to enable it to perform its duties herein. It shall be the duty of the State Tax Commission from such reports, and from such additional information as it may obtain, to ascertain the amount of taxes due, and to certify to every such retail merchant the amount of taxes due for the preceding year, based upon such reports and information as it may ascertain. Upon final action by the State Tax Commission, it shall certify to the Auditor of Public Accounts and to the retail merchant the amount of such tax due by each retail merchant, as defined herein, and it shall be the duty of each retail merchant to pay the amount of such tax to the Auditor of Public Accounts not later than thirty days thereafter.

"In reporting the gross sales for the year 1930, retail merchants shall include only those sales made between the date that this act becomes effective and December 31, 1930, and the license tax due for the year 1930 shall be based on the amount of those sales only.

"§ 4. The license or excise tax levied herein, shall not be in lieu of any special state license, excise, occupational or corporation license tax due under the provisions of any law now in force, or that may hereafter be enacted. Should any retail merchant, as defined herein, be liable for and pay any special state license, excise, occupational or corporation license tax under the laws now in force, or that may hereafter be enacted, credit may be taken on the tax levied in this act for the amount of such special license, excise, occupational or corporation license tax so paid not to exceed the amount of the license or excise tax levied herein."

Plaintiffs contend that the act violates the Fourteenth Amendment to the Federal Constitution in that it denies them the equal protection of the law and deprives them of their property without due process of law, that it violates the Federal Constitution in that it discriminates against and burdens interstate commerce, and that it violates the Bill of Rights of the State Constitution, which (sections 1, 2) prohibits the exercise of arbitrary power over the lives, liberty, and property of citizens and secures to all the inalienable right of acquiring and protecting property, and is so arbitrary and confiscatory as to be unauthorized as an excise or license tax under section 181 of the Constitution. Some claim is also made that it violates other provisions of the Constitution of Kentucky, but these contentions apparently are not seriously urged, and we shall not notice them.

### Does the Act Deny to the Plaintiffs the Equal Protection of the Law?

It is the contention of the plaintiffs that equal protection of the law under the Fourteenth Amendment is denied by the act because:

(1) The classification of the persons taxed into eight different groups, according to the amount of gross sales, and a corresponding stepping-up of the rate, is not justified by any conceivably substantial distinction between the classes, but is wholly arbitrary and discriminatory.

442

(2) The credits allowed by section 4 of the act operate, in most cases, to exempt from the tax those falling in the class having annual gross sales of less than $400,000, and that this section also operates to give a preference to those entitled to such credits over those taxpayers who have no special license or excise taxes upon which to claim the credits authorized by section 4.

■ It should always be remembered that the power of the state to tax for public purposes within its constitutional sphere is as unlimited as is the power of the national government within its sphere, except for the equality clause of the Fourteenth Amendment.

■ It has often been written that the equal protection provision of the Fourteenth Amendment is not a guaranty of equality of the operation or application of state legislation upon all the citizens of a state. All that it intends to secure to citizens is that the laws of a state shall have equality of operation and application on persons according to their relations. That is to say, it is a guaranty to every citizen that he shall be accorded the same treatment by the laws of his state as is accorded to other citizens in his class and similarly circumstanced. As applied to taxation, it has been repeatedly declared by·the Supreme Court that this provision of the Constitution does not prohibit classification further than that the classification must be rested upon some ground of difference having a fair and substantial relation to the object of the legislation. The exemption of certain classes of property from taxation, or the imposition of different rates of taxation upon different classes of property or persons, is not prohibited by the equal protection provision of the Fourteenth Amendment, provided the classification is not unreasonable or arbitrary; and this is true as to excise, license, and occupational taxation, as well as property taxation. It is not necessary that the classification shall be one that appeals to the judgment or sense of fairness of courts. It is enough if the classification is reasonably founded on the "purposes and policies of taxation." Generally speaking, the judgment of the legislative body is conclusive as to classification unless it is based upon so unsubstantial a difference in the classes affected, or is so arbitrary and unreasonable as to preclude the assumption that the classification was made in the good-faith exercise of legislative judgment and discretion. These principles are so well settled that citation of authority is hardly necessary, but among the cases sustaining the principles above enunciated are Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037; Campbell v. California, 200 U. S. 87, 26 S. Ct. 182, 50 L. Ed. 382; Royster Guano Co. v. Virginia, 253 U. S. 412, 40 S. Ct. 560, 64 L. Ed. 989; Watson v. State Comptroller, 254 U. S. 122, 41 S. Ct. 43, 65 L. Ed. 170; Stebbins v. Riley, 268 U. S. 137, 45 S. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454; Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350; McLean v. Arkansas, 211 U. S. 539, 29 S. Ct. 206, 53 L. Ed. 315; Armour Packing Co. v. Lacy, 200 U. S. 226, 26 S. Ct. 232, 50 L. Ed. 451; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; Alaska Fish Salting & By-Products Co. v. Smith, 255 U. S. 44, 41 S. Ct. 219, 65 L. Ed. 489.

■ The decisions are equally clear that, in order to sustain classified taxation of things or persons, the difference between the classes need not be great. We think it safe to say that slight differences, such as in ability to pay, in character of property or circumstances of persons taxed, will sustain state tax classification against attack under the equal protection clause of the Fourteenth Amendment. Further, we think it may be laid down as a sound rule that, even though the court may doubt or question the existence of the distinction or difference forming the basis of classification for state taxation, yet, if the matter is one about which reasonable men may disagree, the judgment and discretion of the legislative body should not be interfered with.

■ Measured by these rules, we are unable to say that the act in question violates the equal protection clause of the Fourteenth Amendment. It is well settled, and the plaintiffs concede, that classification for taxation based upon mere volume is not open to attack under the Fourteenth Amendment. Plaintiffs contend, however, that it is a long cry from classification upon volume, by the application of the same rate to all classes, to a classification which steps up the rate on the respective classes determined according to volume. Conceivably there might be some merit in this contention, if the law under attack here imposed increasing rates upon the entire volume of business done by those in the higher classes. But such is not the case here. All those who fall exclusively within the $400,000 class have applied to them exactly the same rate, and each taxpayer in

each higher classification gets the benefit of exactly the same rate, not only of other taxpayers in his particular classification, but he and all others in his class likewise get the same rate applied to that portion of their sales which falls within the lower classifications, as is exacted of those taxpayers who fall exclusively within such lower classifications.

Therefore it seems quite clear to us that the rates applied in this act apply equally to all in the same class. Hence the claim of the plaintiffs that classification of taxpayers according to volume and the application of different rates to different classes amounts to a denial of equal protection of the law comes at last to the proposition that such classification is so unreasonable and arbitrary as to preclude the assumption that the classification was made in the good-faith exercise of the taxing power of the state.

Having in mind the principles heretofore adverted to, we cannot agree to this proposition. The court judicially knows that there is in the public mind a quite widely accepted theory that taxation may properly be based upon ability to pay, and this theory has often been translated into legislative action. There is a widely accepted theory of economics that, as a general proposition, ability to pay increases with volume of business, because, generally speaking, increased volume of business means increased profits. We recognize, of course, that this theory of economics is not universally accepted, but, on the contrary, is vigorously opposed by another school of economic thought. These opposing theories were vigorously advanced in these cases by business men and economists in their testimony. If economists and business men disagree on these propositions, how can it be said that legislative classification in harmony with one of these schools of thought to the exclusion of the other is not reasonably founded in the "purposes and policies of taxation," or that such classification precludes the assumption that it was in the good-faith exercise of legislative judgment and discretion?

It is vigorously urged upon us that the provision of section 4 of the act which allows a credit to the extent of special license, excise, occupational, or corporation license taxes paid by the retail merchant operates to deny equal protection to those taxpayers who are required to pay no such taxes, and as an illegal discrimination in favor of those taxpayers in the lower brackets whose special taxes paid under other laws of the state are sufficient in amount to almost or entirely liquidate the tax here involved. This view is an entirely superficial one. No individual taxpayer under this law has any vested right in the continuation of a corporation license tax imposed by state law on his corporate competitor, nor in the continuation of any other special license tax any of his competitors has heretofore been required to pay. Certainly the Legislature, in the imposition of the tax here involved, could have repealed all special license taxes which were imposed by law upon those coming within the ambit of the act under consideration. If there are any retail merchants affected by this act who, prior to its enactment, were not required to pay any special license taxes, they had the advantage over their competitors from whom such taxes were exacted. Section 4, to the extent that it allows the payment of such taxes as a credit, simply eliminates a discrimination, though not an illegal one, which theretofore existed. The fact that these credits will substantially liquidate the tax of many of the taxpayers whose sales amount to less than $400,000 is simply an incident in the operation of the law. Taxpayers in the higher brackets, where they pay such special taxes, get exactly the same credits. Those who complain of these credits because they are not entitled to like credits put themselves in the anomalous position of complaining because they have not heretofore been subject to special license or other special taxes.

It seems to us that the claim of the department stores, that the law in requiring them to treat the operation of all their departments as one unit, and of the chain stores, that the law in requiring them to similarly treat the operation of all of their stores, amounts to a discrimination against them and in favor of the retail merchant operating a single nondepartment store, is equally wanting in merit. This unitary classification of department stores and chain stores undoubtedly conduces to simplification in the collection of the tax. The taxation is not based upon the number of stores the taxpayer owns, but upon his gross sales. It is in the nature of a license or excise tax, and we know of no constitutional inhibition which would prohibit the state from requiring each taxpayer to report the result of all of his business in the state and pay taxes on the aggregate result. The seeming inequality urged because of this feature of the law arises from the taxpayer's method of doing business, and not from any inherent inequality in the law itself.

### Does the Act Deny Due Process under the Fourteenth Amendment?

Oftentimes it is difficult to test state legislation, particularly tax legislation, by the due process clause of the Fourteenth Amendment. As pointed out by Mr. Chief Justice Taft in Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 129, 66 L. Ed. 254, 27 A. L. R. 375, it is more or less customary to treat the due process and the equal protection clauses of the Fourteenth Amendment together; but, as he observed in that case, while they may so overlap that a violation of one may involve at times the violation of the other, "the spheres of the protection they offer are not coterminous." It is conceivable that a state taxing statute may be based on a proper classification and give absolute equality between persons in the same class, so as to make it immune from attack under the equal protection clause, and yet amount to a denial of due process.

■ In considering the question whether a state taxing law denies due process under the Fourteenth Amendment, a consideration of what amounts to a denial of due process by Congress under the Fifth Amendment is most helpful, because it is well settled that the restraint imposed upon state Legislatures by the due process clause of the Fourteenth Amendment is exactly the same as that imposed upon Congress by the due process clause of the Fifth Amendment. Coolidge v. Long, 282 U. S. 582, 51 S. Ct. 306, 75 L. Ed. 562; Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772.

In the case of Brushaber v. Union Pacific Co., 240 U. S. page 1, 36 S. Ct. 236, 244, 60 L. Ed. 493, the Supreme Court, in discussing the limitation of the due process clause of the Fifth Amendment on the taxing power of Congress, said: "So far as the due process clause of the 5th Amendment is relied upon, it suffices to say that there is no basis for such reliance, since it is equally well settled that such clause is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words, that the Constitution does not conflict with itself by conferring, upon the one hand, a taxing power, and taking the same power away, on the other, by the limitations of the due process clause. * * * And no change in the situation here would arise even if it be conceded, as we think it must be, that this doctrine would have no application in a case where, although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property; that is, a taking of the same in violation of the 5th Amendment; or what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion."

From this language it seems clear that, if congressional legislation, under the guise of taxation, amounts to confiscation of property, or is so foreign to the practices of government in taxation as to shock the sense of justice, it would violate the due process clause of the Fifth Amendment, and this principle is reaffirmed in Heiner v. Donnan, supra, and in Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081. This rule therefore furnishes a safe guide for determining if state tax legislation transgresses the due process clause of the Fourteenth Amendment.

In thinking of valid taxation, state or national, we instinctively exclude legislation which, either because of the rate imposed or because of other features, amounts to confiscation of the taxpayer's property, whether that property is tangible effects or his business.

■ Under the act here involved, the effective tax rate, without allowing for deductions of the special taxes referred to in section 4 of the act, applicable to taxpayers with gross sales of $1,300,000, is in excess of $\frac{1}{2}$ of 1 per cent.; to taxpayers with sales of $5,000,000 in excess of $\frac{86}{100}$ of 1 per cent.; to taxpayers with $7,000,000 of gross sales, $\frac{9}{10}$ of 1 per cent.; and to taxpayers with $11,000,000 of sales, in excess of $\frac{93}{100}$ of 1 per cent.; and, as the volume of sales increases beyond this figure, the effective rate gradually approaches, although it can never quite reach, 1 per cent., due to the fact that the taxpayer in the higher bracket gets the benefit of the application of the lower rates to that part of his gross sales which falls within the lower classifications. Therefore, if the proof satisfactorily showed that 1 per cent. of gross sales represents the net profit normally realized by any branch or subdivision of the retail mercantile industry, we would have no hesitation in holding the tax confiscatory, at least as to that branch or subdivision of the industry. The burden is upon the plaintiffs who are attacking the law to show that it is confiscatory; but this burden is not sustained merely by showing that it is confiscatory when applied to the business of the least efficient members of the industry taxed. The test is: What is its ef-

fect generally upon the class taxed, or what is the effect generally upon any branch or subdivision of that class? We think the proof falls far short of showing that 1 per cent. of gross sales represents the net profit normally realized by retail merchants as an entire class or normally realized by any branch or subdivision of the industry. On the contrary, we think the preponderance of the proof is to the effect that the profit is normally from 2 to 2½ per cent. of gross sales, after deduction of taxes, and that in many lines of retailing the profit is even higher.

Quite a good deal of proof has been introduced which shows that the tax would have been substantially confiscatory as applied to the business of the Kroger Grocery & Baking Company during the three years of 1930, 1931, and 1932; but the proof further strongly tends to show that there was lack of efficiency in the operation of the business of this concern during those years. The testimony of Mr. Morrill, the new president of that concern, shows that under his administration the efficiency of the operations of that company has been so improved that for the first six months of the year 1933 the net profits amounted to $2,294,000, as compared to substantially $1,475,000 for the entire year 1930, to $2,199,000 for the entire year 1931, and to $2,441,000 for the entire year 1932, and that the net profits, after deduction of taxes for the first six months of 1933 amounted to 2.49 per cent. of gross sales, as compared to a net profit of slightly in excess of one-half of 1 per cent. for 1930, slightly less than 1 per cent. for 1931, and slightly in excess of 1 per cent. for 1932. There is nothing in the record to show that the experience of this company on its business in Kentucky is substantially different from that in its business as a whole.

We feel constrained, therefore, to hold that the proof fails to establish that in its application to those in the higher brackets the tax amounts to confiscation. We must confess that it appears to us that the tax falls very heavily on those in the higher brackets; but, inasmuch as it falls short of confiscation, relief must be secured at the hands of the Legislature, not from the courts.

### Does the Tax Discriminate against Interstate Commerce or Constitute a Burden on Interstate Commerce?

We think this question is conclusively decided against the contention of the plaintiffs by the opinion of the Court of Appeals of Kentucky in the case of Moore v. State Board of Charities and Corrections, 239 Ky. 729, 40 S.W.(2d) 349. The plaintiffs vigorously assail the authority of this case, upon the ground that a legal fraud was practiced upon the state courts, in that there was no real controversy between the parties to that litigation. We cannot escape the fact, however, that the validity of the act was squarely presented to the Court of Appeals in that case. That court had jurisdiction of the subject-matter and of the parties, and, while the action which led to the opinion in that case originated after these actions had been filed in this court, that fact can have no effect upon the binding force of the opinion of the state court, in so far as it deals with the meaning and interpretation of the act. The opinion of that court as to the meaning and scope of the act is binding upon all state officials, and is binding upon us. Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375. But of course the opinion of that court as to the practical results of the application of the act so construed involves a finding of fact and is not binding upon us. That court in the opinion referred to specifically held that the act does not apply to sales made in interstate commerce, and further held that, properly interpreted, section 1 does not and was not intended to discriminate against farm and garden products raised in other states and sold in this state.

### Does the Act Violate the Bill of Rights of the State Constitution, or Is It Unauthorized by Section 181 of That Instrument?

The tax involved here must find its justification in section 181 of the State Constitution, the pertinent part of which provides: "The general assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax; and may, by general laws, delegate the power to counties, towns, cities and other municipal corporations, to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions."

This section has been frequently considered by the Court of Appeals of the state, and it is now well settled that it must be read in connection with the Bill of Rights contained in the State Constitution, which forbids the exercise of arbitrary power over the lives, liberty, and property of citizens,

and secures to all the inalienable right of acquiring and protecting property, and that, when so read, section 181 confers no power to prohibit, or substantially prohibit by taxation, a legitimate business, or to resort to unreasonable classification in taxation. Fiscal Court of Owen County v. F. & A. Cox Co., 132 Ky. 738, 117 S. W. 296, 21 L. R. A. (N. S.) 83; City of Louisville v. Pooley, 136 Ky. 286, 124 S. W. 315, 25 L. R. A. (N. S.) 582; Sperry & Hutchinson Co. v. Owensboro, 151 Ky. 389, 151 S. W. 932, Ann. Cas. 1915A, 373. Thus we have presented under the Bill of Rights contained in the State Constitution and under section 181 of that instrument exactly the same questions we have disposed of in our consideration of the due process and equal protection clauses of the Fourteenth Amendment, and it necessarily follows that the claim of the plaintiffs that the Act violates the State Constitution in the particulars referred to must be denied.

The temporary injunction heretofore issued will be dissolved, and the permanent injunction prayed for denied. Inasmuch as we feel confident the plaintiffs will desire to appeal these cases to the Supreme Court, the temporary injunction will be continued in force for thirty days following the entry of the decree herein directed to be prepared, and if before the expiration of that period steps have been taken to appeal the cases, such temporary injunction will be continued until final disposition of the cases by the Supreme Court.

In view of the unsettled economic condition of the country, and in view of the possibility that after a reasonable trial the law may prove confiscatory as to some branches or subdivisions of the retail mercantile business, we feel constrained to leave these cases on the docket, without prejudice to the right of the plaintiffs, after such reasonable trial, to apply to this court to reopen and rehear the causes on the single question of confiscation. See Opinion of the Supreme Court of December 4, 1933, in Glenn et al. v. Field Packing Company, 290 U. S. 177, 54 S. Ct. 138, 78 L. Ed. 252.

Counsel may prepare and present for entry a decree conforming to the views herein expressed.

COCHRAN, District Judge, dissents. See 8 F. Supp. 396.