## Morgan, et al. v. Figg, et al.

(Decided December 18, 1914.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Municipal Corporations—Cities of Sixth Class—Street Improvements—Assessment of Costs—Authority of Board of Trustees—Section 3706, Kentucky Statutes.—Since Section 3706, Kentucky Statutes, authorizing the original improvements of streets in cities of the sixth class at the cost of the abutting property owner, does not provide that payment therefor, when the ten year bond plan is not adopted, shall be made in cash, it is within the power of the board of trustees to contract for the work either on a cash basis or a deferred payment plan, and it is no defense to an action by a contractor to enforce a lien for such improvements that a bid was accepted on a deferred payment plan.

2. Municipal Corporations—Cities of Sixth Class—Improvement of Streets—Lien on Abutting Property—Section 3706, Kentucky

Statutes.—Under Section 3706, Kentucky Statutes, street improvement assessments are secured by a lien on the abutting property, whether made on the ten year bond plan or otherwise.

JOSEPH S. LAWTON and W. S. SANFORD for appellants.

FURLONG, WOODBURY & FURLONG for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiffs, L. R. Figg, suing for the First National Bank, and the First National Bank, brought this action against defendants, John S. Morgan and others, abutting property owners, to enforce certain liens for the improvement of Third Street in the town of Oakdale, between Young Street and the Boulevard. The chancellor granted the relief prayed for, and the defendants appeal.

Oakdale is a town of the 6th class. Section 3706, Kentucky Statutes, providing for the improvement of streets in towns of the sixth class, is in part as follows:

"The board of trustees is hereby authorized and empowered to order any work they deem necessary to be done upon the sidewalks, curbing, sewers, streets, avenues, highways, and public places of such towns. The cost and expenses incurred in repairing streets, avenues, highways, sewers, and public places shall be paid out of the general fund of the town. The expense incurred in making and repairing sidewalks and curbing shall be paid by the owners of the land fronting and abutting thereon, if the board of trustees so order, each lot or portion of lot being separately assessed for the full value thereof in proportion to the frontage thereof to the entire length of the whole improvement, not to exceed a square, sufficient to cover the total expense of the work.

"The cost and expenses incurred in constructing or reconstructing sidewalks, curbing, streets, avenues, highways, sewers, and public places shall be paid out of the general fund of the town or by the owners of the lands fronting and abutting thereon, as the board of trustees may, in each case determine; but the local assessment shall not exceed fifty per centum of the value of the ground after such improvement is made excluding the value of the buildings and other improvements upon the property so improved.

"Whenever the board of trustees shall determine upon the construction or reconstruction of streets, avenues, highways, sewers, and public places at the expense of the abutting property, they shall cause the same to be done as follows:

"The ordering of such improvement shall be by ordinance of the board of trustees, and the contract therefor shall be awarded to the lowest and best bidder after proper advertisement for bids.

"The said board of trustees shall require the accepted bidder to execute a bond to the town with good and sufficient surety to be approved by said board of trustees for the faithful performance of his contract.

"The original construction or reconstruction of any sidewalk, curbing, streets, sewers, avenues, highways, alleys, and public places may be made the exclusive cost of the owners of the lots and parts of lots or land fronting or abutting or bordering upon the proposed improvement be equally apportioned by the board of trustees according to the number of front feet owned by them respectively upon the petition of the property owners of lots or parts of lots, or land abutting or bordering upon the proposed improvement; or the board of trustees may cause same to be done without such petition upon the vote of four members-elect of said board of trustees at a regular meeting thereof; or the board of trustees may, by a majority vote at any regular meeting thereof, cause any such improvement to be made upon the ten-year bond plan."

The remainder of the foregoing section applies to improvements made on the ten-year bond plan, and is not material to this case.

The improvement in question was ordered during the year 1905, by votes of four trustees. Bids were called for by proper advertisement. There were three bidders. Plaintiff Figg agreed to do the work for $4.50 a lineal foot on each side of the street, payment thereof to be made in installments extending over a period of not exceeding five years from the completion of the work, and also agreed to do the work at $4.29½ a lineal foot on each side of the street if the town itself would pay cash. Figg's bid was the lowest and was accepted by the board of trustees. The contract was drawn up and signed by the board of trustees and by Figg and his surety, providing that payments should be made either in cash or in equal quarter-annual payments, to

extend over a period not exceeding five years. Pursuant to the above contract the improvement was completed. Figg testified that where he was required to look to the property owners for payment his bid would be the same, whether on a cash basis or deferred payment plan. There is no evidence to the effect that his bid was higher because of the method of payment. The property owners admit that if they had to pay at all they would prefer to pay on the deferred payment plan.

The regularity of the proceedings is called in question in only one respect. It is insisted that the statute provides for two plans, one on a cash basis, and one on the ten-year bond plan; that instead of adopting one or the other of these two plans, the board of trustees accepted the bid on the five-year payment plan, which, not being authorized by the statute in question, invalidates the whole assessment.

It will be observed that Section 3706, *supra*, authorizes the board of trustees to order the construction of a street at the cost of the lot owners abutting thereon, to be equally apportioned by the board of trustees according to the number of front feet owned by them respectively, either upon the petition of a majority of the abutting property owners, or without such petition upon a vote of four members-elect of the board of trustees, at a regular meeting thereof. The act in question is not as specific as the acts relating to street improvements in towns of other classes. The act provides for assessing the cost against the abutting property. It also provides for the issuing of bonds on the ten-year plan. When the latter plan is adopted improvement taxes are divided into ten annual installments, and bear interest from date. In view of the latter provision, it is insisted that when the first plan is followed, payment of the assessments must necessarily be in cash. This, however, is a mere inference. The statute is silent upon the subject. It contains no provision requiring payment to be made in cash. In the absence of such provision, we conclude that it is within the power of the trustees to contract for the improvement either on a cash basis or on a deferred payment plan, or to give to the property owner, as was done in this case, the option to pay either in cash or on a deferred payment plan. Certainly there can be no complaint of the deferred payment plan where, as in this case, it does not appear that the contractor's bid was any higher because of that plan, and the property owners

say that if they have to pay at all they perfer to pay on that plan. Under this view of the statute it cannot be said that the trustees provided for a time of payment not authorized by the statute.

While it is true that the act does not in terms provide where the ten-year plan is not adopted that the cost of the improvements shall be a lien on the abutting property, it is apparent from the act that such was the purpose of the Legislature. It did not have the power to impose a personal liability on the abutting property owner. When, therefore, the act provided that the work should be done at the cost of the abutting property owner, and should be apportioned by the board of trustees according to the number of front feet owned by them respectively, there can be no escape from the conclusion that the assessment should be secured by a lien on the abutting property.

Judgment affirmed.