# City of Dawson Springs et al. v. Hamby et al.

(Decided May 13, 1938.)

EARLE M. NICHOLS for appellants.

MARTIN GLENN for appellees.

Opinion of the Court by Judge Thomas—Reversing.

In March, 1923, the city of Dawson Springs, Ky.—one of the fifth class—through its council enacted an ordinance for the improvement of Main street in the city, abutting upon which the appellees and defendants below, H. G. Hamby and others, owned property. The work was completed and assessments were duly made against the abutting property for its proportionate part of the cost of the improvement—all of which was made and done in strict compliance with the then statute relating to the subject, and which was a part of the charter of cities of the fifth class. The cost allotted against the property of defendants amounted to $424.00, which was $42.40 per annum for ten years. The allotment was made by the council on October 4, 1923, followed by the issuing of bonds extending over a period of ten years, with annual maturing assessments with a lien upon the property, which was done pursuant to the provisions of the then section 3643-7 of Carroll's Kentucky Statutes, which was at that time also a part of the charter of cities of the fifth class.

Defendants made no cash payment for the first year's assessment, nor did they ever pay any part of any subsequent annual assessment. The ordinance under which the improvement was made contained provisions wholly outside of and beyond the power and authority of the city council to enact, in that it proceeded to prescribe for the exercise of an option of the abutting property owner as to whether or not the improvement should be made on the ten year plan, and to declare that if such option on the part of the property holder was not exercised within the time prescribed in the ordinance, then the whole cost of the improvement should become due and collectible, and the lien therefor enforced against the property. There were other provisions in the ordinance, some if not all of which are contained in corresponding charter provisions of cities of other classes, and particularly those of the second, third, and fourth classes, but none of which are found or were contained in charters of fifth-class cities at the time the improvement here involved was made. On the contrary, such charters (those of fifth-class cities) absolutely required that street improvements of cities of the fifth class should be made and the cost paid in the manner provided by the ordinance ordering the im-

provement, i. e., the city could pay it all, or it could specify in the ordinance the part of the cost that should be paid by the city and the other part by the abutting property owners; but whensoever payment by the property owners was prescribed or specified, it was mandatorily required to be done, and their part of the cost discharged, under the ten year plan. However, at that time the same charter (fifth class) provided in section 3643-10 that the owners of the property might at any time thereafter, before all of the assessments were due and payable, pay the entire amount then unpaid and have their property released from the lien. Such provisional requirements of charters of cities of the fifth class at that time radically differentiated them from charters of cities of other classes; they (other charters) in most, if not in all of them, prescribing that the cost of the improvement was primarily due when the work was completed and the assessment was made, but provided that the property holder might within thirty days thereafter request that payment be made on the ten year plan, and which, if done by him, then the directions of the statute to carry out that plan should be taken.

But no such optional privilege on the part of the property owner was then contained *in charters,* of the *fifth* class. Therefore, all of such provisions above referred to (conforming to requirements of charters of other class cities) that the ordinance of the city of Dawson Springs contained in ordering the instant improvement of defendants' property were pure surplusage and of no legal effect, since it requires no argument to prove that a city council possesses no authority to take any step contrary to the express provisions of statutes conferring upon it the only authority that it possesses—some of which is express authority, and some of which is that which is necessarily inferable from what is expressly given by statute. No authority was possessed by the city council of Dawson Springs to prescribe any other method of payment by abutting property owners for cost of street improvements, except upon the ten-year plan.

The last paragraph in section 3643-7, supra, at the time of the improvement here involved, said: "The assessments may be collected like other taxes, or the city *may* at any time after the installment remains delinquent for thirty days by suit in equity, enforce its lien

with all the unpaid installments, with interest at the said rate thereon to date of satisfaction thereof and its costs expended.'' (Our emphasis.) It will be perceived that its language was and is directed exclusively to the *method of collecting* the annual assessments against property for its proportion of the cost of improving streets in front of it, and the inserted paragraph contained the *only* provision applicable thereto at that time. Since then, and in 1928, the section was amended and it (amendment) contained, inter alia, this language: ''And all unpaid installments of the tax assessed against such property so in default shall, at the option of the city or of any bondholder whose bond or bonds or interest thereon are in default, forthwith become due and payable. Any such action shall be prosecuted in the name of the city for the benefit of any and all bondholders,'' etc. The bonds issued against the Hamby property were taken by the contractor in payment of the cost of the work, and this action by the city of Dawson Springs, for itself and for the use and benefit of the contractor, and by the contractor; was filed in the Hopkins circuit court against defendants on July 10, 1935, to collect all of the assessments made against the Hamby property—there having been none of them as we have seen, paid in any manner.

The chief defense—and the only one of any materiality—was a plea of limitations, based upon the contention that the *improvement ordinance* (not the statute) in this case prescribed as a condition precedent to the adoption of the ten-year plan that the property owner (Hambys in this case) should, within thirty days after the assessment was made, so exercise their option, as therein prescribed, but which they did not do. But, as we have seen, that option, created only by ordinance, was wholly unauthorized, since the statute itself prescribed for no other payment than by the ten-year plan when the improvement was made at the cost of the abutting property owners. Defendants, therefore, contended that inasmuch as they did not exercise the option the entire amount of the improvement became due instanter thirty days after the making of the assessment, and that more than five years (section 2515 of our Statutes) had elapsed since the cause of action accrued for the entire assessment, and the action was, therefore, barred. They furthermore pleaded in a separate paragraph that the excerpt supra from section

3643-7 (being a part of the charter of cities of the fifth class) prescribed that "the city may at any time after the installment remains delinquent for thirty days" enforce the lien for both past-due and all future installments, and that the word "may," as so employed, was mandatory and imperative and should be given the same force and effect as if the words "must" or "shall" were employed. From that premise they contended, and counsel so argues, that the failure to proceed to enforce all future assessments upon default in payment of any of them operated ipso facto to mature all future payments, with the right to enforce the lien to secure them, and that the statute of limitations against the right to maintain such an action then and there started and began to run, and that, since the action was filed long after the expiration of five years, the whole cause of action was barred. By demurrers, and appropriate motions to strike, plaintiffs contested that defense, but the court overruled them, and, declining to plead further, their action was dismissed, to reverse which they prosecute this appeal.

The basic case relied on by defendants in support of their defense of limitations, whereby the right to maintain the action is barred, is that of City of Covington v. Patterson, 191 Ky. 370, 230 S. W. 542. While that case was prosecuted in the name of the city of Covington, the involved improvement lien arose under provisions of charters of cities of the fourth class, Latonia, which became annexed to and a part of the city of Covington after it (Latonia) had required the involved improvements to be made. The provisions of charters of cities of the fourth class, relating to the collection of such improvement bonds, was then contained in section 3575 of the 1922 Edition of Carroll's Kentucky Statutes, wherein it was provided that: "In default of payment of any installment of tax or interest for one month after the same becomes due a penalty of ten per cent (10%) of the installment in arrears shall be added thereto, which shall constitute a like lien as the tax, and all unpaid installments of the tax shall, *at the option* of the city or any bondholder whose bonds or interest thereon are in default of payment, forthwith become due and payable." (Our emphasis.)

Notwithstanding that applicable statute prescribed the acceleration of future annual installments was only "at the option" of the city or any bondholder, we, in

the Patterson opinion, discussed and disposed of the question—as to the effect of statutory acceleration of payment for street improvements—exclusively upon the theory that the right of acceleration was given only by the word "may," as was provided in fifth-class charters only, and in which there was nowhere employed (before the 1928 amendment) the words "at the option of." There was, therefore, no necessity for the court in that (Patterson) case to bottom its opinion (exclusively or otherwise) on the proper meaning that should be attached to the word "may," since the city charters (of fourth class cities), under which the particular improvement there involved was made, expressly prescribed that the precipitation should be *at the option* of the city or any bondholder. It is practically conceded by counsel—and almost universally declared by all courts—that when the right of the city or the bondholder (where the right of precipitation of future installment payments is so given) is but an optional one, with only a discretion in them as to whether or not they will exercise it, and that the language creating the option does not ipso facto impose upon them the *mandatory* duty to enforce future assessments from and after any default so as to start the statute of limitations running against their enforced collection. See annotation in 113 A. L. R. 1168, following the Tennessee case of Morristown v. Davis, Tenn. Sup., reported in 110 S. W. (2d) 337, 113 A. L. R. 1164, and the domestic Middlesboro and Horton Cases, infra. In that annotation not a case is cited, where the words "at the option of" are employed in the statute in conferring the right of precipitation, so as to start the statute of limitations against an action to enforce future collection of assessments. On the contrary, wheresoever those words are employed in the statute the courts have uniformly held that mandatory acceleration was not made, and that a failure to exercise the option did not mature the right of action so as to automatically start the running of limitations, and the cases of Middlesboro v. Terrell, 259 Ky. 47, 81 S. W. (2d) 865, and City of Louisa v. Horton, 263 Ky. 739, 93 S. W. (2d) 620, are cited in support of that universally declared rule. It is, therefore, clear that the conclusion reached and announced in the Patterson Case was and is erroneous (and possibly dictum) as applied to the interpretation of applicable charter provisions of cities of the fifth class, because such later charter provisions were not involved

in it. On the contrary, similar language contained in charters of third class cities—and those of the fifth class as now amended—was construed in the Horton and Middlesboro Cases directly contrary to the interpretation declared in the Patterson Case. Therefore, if we had before us for interpretation similar provisions in this case we should follow the later ones, unless we concluded that they are erroneous, but which conclusion we do not entertain.

Moreover, if there had been involved in the Patterson Case applicable charter provisions of cities of the fifth class only, we then more than seriously doubt the correct interpretation of the word "may" as having the force of automatically precipitating the due dates of future installments so as to start the running of the statute of limitations against the right to enforce the collection of future installments, so as to bar the action after the expiration of five years from the first default. The only Kentucky case cited in the Patterson opinion in support of that interpretation of the word "may" is Ryan v. Caldwell, 106 Ky. 543, 50 S. W. 966, 20 Ky. Law Rep. 2030. But the obligation there involved was an inter partes one—it being a note—and the precipitating language contained in it was "should as much as two installments of interest, at any time, be due and unpaid, then, and in that event, the whole shall be and become due." There is not a word in that precipitating language remotely pointing to an optionary right, nor is the word "may" contained anywhere in it. It most unmistakably and most imperatively prescribed that upon the happening of the contingency named, then "the whole debt *shall* become due." So that the Ryan Case, which is the only Kentucky authority cited in the Patterson Case to sustain the interpretation given to the word "may" (appearing in fifth class charters), was not only one involving the right of precipitation between individuals growing out of a private contract, but the language creating the right was most emphatically imperative and mandatory and totally stripped of any optional elements.

In annotations contained in 34 A. L. R. 897, cases are cited where the courts in some instances have construed the word "may," when employed in private contracts, as equivalent to "shall" or "must" when conferring the right to precipitate future payments with the consequent right of the payee to proceed to

collect them. But in all of those cases where the word was given that interpretation, the courts concluded from the entire language of the instrument wherein it occurred that the parties intended for it to have such mandatory meaning. However, the majority of cases cited in that annotation hold that *without* such gathered imperative significance from other parts of the instrument—and ordinarily—the word "may" has only an optional significance, and that whenever the right of precipitation is optional, the statute of limitations *does not* automatically begin to run if the option is not exercised. See annotations in 113 A. L. R. 1168, supra, and the Middlesboro Case, supra. Our holdings in the cases of Hoerth v. City of Sturgis, 221 Ky. 835, 299 S. W. 1074; Jackson's Heirs v. Willson, 226 Ky. 211, 10 S. W. (2d) 816, and others of like nature, are reconcilable with what we have said, since they were dealing with charters of cities of a different class from that of the city of Dawson Springs, and one of the fifth class, the differences between which, farther than we have already gone, will not, for the lack of time and space, be pointed out.

In the case of City of Louisa v. Horton, 263 Ky. 739, 93 S. W. (2d) 620, the accelerating provision of charters of cities of the fifth class was involved; but they had been altered by the 1928 amendment to which we have referred, from the condition they were in at the time of the improvement here involved. Judge Richardson, writing for this court, differentiated the Patterson Case because of that amendment, without approving or disapproving the interpretation given to the word "may" in that (Patterson) opinion. The City of Sturgis Case, supra, is authority for the proposition hereinbefore stated that the city council by its ordinance cannot run counter to the statute, under which it is given authority, and enact provisions contrary thereto. The ordinance passed in that case was under the mistaken belief that the city of Sturgis was then a fourth-class city; whereas, it had been taken out of that class at the 1928 session of the Legislature and put into the fifth class. Therefore, we held therein that all provisions of the ordinance there involved, and which were in conflict with charter provisions of cities of the fifth class to which Sturgis had been transferred, were all surplusage; but which did not have the effect to render the entire ordinance void, and, since there was

enough left in it to create a valid exercise of conferred improvement authority by cities of the fifth class, it was upheld.

Aside from and independently of all the foregoing, an examination of judicial determinations discloses the disposition of courts to give to the word "may" its primary significance, in the absence of context language calling for a different interpretation. That primary signification, according to Mr. Webster, is "liberty; opportunity; permission; possibility." Further along in giving the definition the learned lexicographer says: "Where the sense, purpose, or policy of a statute *requires* it, *may,* as used in the statute, will be construed as *must* or *shall;* otherwise *may* has its *ordinary* permissive and discretionary force." (Our emphasis.) Section 460 of our present Statutes says, inter alia, "all words and phrases shall be construed and understood according to the common and approved usage of language," and which we held in the cases of Bailey v. Commonwealth, 11 Bush 688, and Frankfort, L. & V. Turnpike Company v. Commonwealth, 82 Ky. 386, 6 Ky. Law Rep. 391, as but "declaratory of a part of the common law on the subject."

There is nothing in the charter of cities of the fifth class, to which the city of Dawson Springs belongs—and to which it belonged at the time of ordering the improvements here involved—to indicate that the word "may," as used in the accelerating or precipitating clause of its charter, should have any other meaning than that given to it "according to the common and approved usage of language"; nor had there anything occurred prior to the incorporation of the word in the statute by which it "acquired a peculiar and appropriate meaning in the law" different from its primary signification. We, therefore, conclude without further extension of the discussion, that as employed in section 3643-7, as it was framed in 1923 when the improvement here involved was ordered, the word "may" conferred only an accelerating option to the city or the bondholder, and that a failure to exercise that option did not automatically start the running of limitation against the right of action to collect future payments. As we interpret the pleadings, five of such payments were not barred at the time of the filing of this action; but whatever may be the number that were not past due as much

as five years, limitation had not run against them and the court erred in holding otherwise.

The interpretation herein given is in harmony with the great majority of adjudged cases, as we have pointed out—and also in accord with the rules for the interpretation of language and the construction to be given words. It likewise embodies an opportunity of the creditor to extend unpenalized leniency toward and consideration for the property owner who might be unable to meet the entire precipitated cost of the improvement in front of his property, but who might be relieved therefrom by lenient consideration from the bondholder who in extending it would not incur the penalty of maturing his entire debt so as to start the statute of limitations running against future maturing installments. Our interpretation also gives greater consideration to the protection of the rights of the bondholder and preserves those rights from becoming extinguished or impaired by any act of the city—who was the only one in 1923 that was given the right to enforce the collection of future maturing assessments upon default in payment of any past-due ones. The bondholder at that time was not given the right to exercise that option. It was confined exclusively to the city. He (the bondholder) might be a resident of another state, or even of a foreign country, and by neglect or collusion of the city no precipitating action would be taken by it, and the bondholder, after the statutory period of limitation, would be deprived of his lien, which, in many instances, would possibly be without any knowledge on his part of the dereliction of the city in the premises. It will be readily seen that an interpretation whereby extended relief to the property owner by the bondholder would be so penalized, and whereby the bondholder would incur the hazard of losing his lien, should not be adopted, unless the language to be interpreted will, in the light of its context, admit of no other interpretation. For reasons stated (quasi dictum and others) the Patterson Case should no longer be followed.

Wherefore, the judgment is reversed, with directions to overrule the demurrer as to all annual installments that had matured less than five years before the filing of the action, and for other proceedings consistent with this opinion.

The whole court sitting.