# Premier Construction Company v. Kimmell et al.

(Decided June 7, 1929.)

HENSON & TAYLOR for appellant.

F. J. PENTECOST for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This suit was brought by the appellees, as taxpayers of the city of Henderson and also as owners of certain real estate abutting on Fifth street in that city, to enjoin

the carrying out of a contract entered into by the appellant and the city of Henderson for the construction of Fifth street under ordinances duly passed providing for the improvement. The lower court granted the appellees the relief they sought, and from that judgment this appeal is prosecuted.

The issue in this case as finally·made by the pleadings turns on whether or not the city on the 19th day of September, 1927, when it entered into the contract here in question, was in such a financial condition as that it could incur under that contract certain liabilities, some of which are conceded and some of which are in dispute. Of course, without a vote of the people, which was not had in this case, the city could not by making the contract here in question incur a liability which, when added to other liabilities then incurred, exceeded its revenue for its fiscal year 1927-1928. We are therefore met at the threshold of this case with the question: ''What was the condition of the city on the 19th day of September, 1927, with respect to its revenues for the fiscal year 1927-1928, and liabilities then incurred?'' This case has been excellently briefed on both sides, and the lower court filed a very comprehensive opinion which so admirably and correctly summarizes the evidence as to the financial condition of the city as of the 19th day of September, 1927, that we quote from it as follows:

''Tested by the opinions of the Court of Appeals of this State, it seems to me that certain revenues of the city for the fiscal year of 1927-1928 were as follows:

| | |
|---|---|
| Property tax at $1.00 on each $100 of valuation | $79,864.71 |
| Tax on tobacco | 282.32 |
| Poll tax | 4,240.50 |
| Franchise tax | 43,872.24 |
| Back taxes | 9,000.00 |
| Cash on hand and in bank at the beginning of the fiscal year | 10,468.34 |
| Total | $147,728.11 |

''The budget ordinance for the fiscal year, which levies and distributes the taxes for that year, appropriates such taxes to the following sources, omit-

ting that appropriated to the funds for permanent streets and general expenditures:

| | |
|---|---:|
| Mayor and officers | $25,000.00 |
| Wharf | 200.00 |
| Police department | 19,000.00 |
| Fire department | 20,000.00 |
| Parks | 2,500.00 |
| Cemeteries | 7,000.00 |
| Scavenger | 10,000.00 |
| Hospital | 4,000.00 |
| Health | 2,500.00 |
| Sewers | 10,000.00 |
| Charities | 2,000.00 |
| Street oiling | 500.00 |
| Street maintenance | 15,000.00 |
| Total | $117,700.00 |

"It will be noted that this ordinance sets apart the above-mentioned amounts to the named purposes and no other; also, that the Statutes of Kentucky prohibit the expenditure of these funds for any purposes other than those named in the ordinance levying the tax. Kentucky Statutes, sec. 3290, subd. 12.

"This being true, there was a balance at the beginning of the fiscal year against which the city could contract, which—

| | |
|---|---:|
| Amounted to the sum of | $30,028.11 |
| To which should be added the following sums: | |
| Fines collected during that fiscal year before Oct. 1st | 642.72 |
| Net return from utilities for the same period | 7,008.68 |
| Total | $37,679.51 |

"It appears, however, that the city was indebted at the beginning of the fiscal year in the following amounts:

| | |
|---|---:|
| Salaries due June 1, 1927 (this figure is given by the witness Rankin, who fixes the average fixed charges of city administration at that amount) | $8,824.81 |
| Amount yet due on Alvasis street contract, which seems to have been entered into some years previous and the validity of which is not attacked | 4,132.92 |
| Amount paid for construction and engineering charges on other street contracts let during the fiscal year 1927-28, not including claims paid to property owners on account of alleged damages or of 50 per cent. valuations | 32,147.52 |

| | |
|---|---|
| Judgment paid Andrews & Co. ........................................... | 2,552.98 |
| Judgment paid Andrews & Co., but which it is stated by counsel has been appealed from ........................ | 3,581.41 |
| Total ............................................................................. | $51,239.64 |

. . . . . . . . . .

"The contract in controversy will, according to the evidence, incur a further liability on the city of about $9,000 and an analysis of the above figures will disclose that the city did not only not have sufficient available revenue with which to meet this obligation but was actually facing a deficit in its certain revenues.

"It is insisted, however, by counsel for Premier Construction Company, that the city should be permitted to anticipate the license taxes which are usually collected by it each year and which it is stipulated the city will be able to collect this year. This contention is founded on certain language used by the Court of Appeals in the case of Overall v. City of Madisonville, 125 Ky. 694, 102 S. W. 279; 31 Ky. Law Rep. 278, 12 L. R. A. (N. S.) 433. This case was discussed in the case of Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855, which discussion does not bear out the contention of counsel. The last-named case, however, does give the right to anticipate the collection of license fees for the operation of motor vehicles, on the very good grounds therein mentioned, and I am at a loss to understand why license fees on other occupations that are no less stabilized than the use of automobiles could not also be anticipated in cases such as this; but it seems that the Court of Appeals has never gone that far and I feel myself bound by their refusal to recognize such fees as being definite enough to authorize municipalities to anticipate their collection with that degree of certainty in cases such as this.

"There is nothing in the record to show that the city of Henderson has levied any license or occupation taxes for the current fiscal year, and it would seem from a reading of Kentucky Statutes, sec. 3290, subd. 12, that such a levy is necessary each year. If, in fact, such a levy is necessary the question of license tax is closed, and if such a levy is

necessary, then it would seem that the city would be entitled to anticipate the collection of license fees on automobiles, which would amount for the current fiscal year to the sum of $4,000.

"Counsel for plaintiffs (appellees) insist that the court, in determining the liability that would be imposed upon the city by the making of the contract in question, should take into consideration not only the cost to the city of street intersections and the paving of the streets in front of property owned by it, but also certain other charges that might eventually fall to the city to take care of; that a great portion of the property affected by the proposed improvement is of such small value that the cost of the proposed improvement, when added to the cost of previous improvements, would far exceed 50 per cent. of the value of such property. This may be true, but even so, I do not think that the court should at this time presume that such property will be of such low value after the improvement is made, or that the owners at the time the improvement is completed will make claims based on such valuations or will not sign the waivers provided for in such cases and elect to pay the cost of the improvement on the bond plan rather than in cash."

It will be noted from the summary which the lower court made of the financial condition of the city as of September 19, 1927, that the obligations of the city which had then been incurred exceeded the revenue of the city for the fiscal year 1927-28 by the sum of $13,560.13. From the liabilities, as found by the court, should be deducted the sum of $3,581.40, being the judgment which was paid Andrews & Co. and later appealed from, since this court in the case of City of Henderson v. Andrews Asphalt Paving Co. et al., 227 Ky. 289, 12 S. W. (2d) 863, held that the city was not liable for that judgment. This leaves net liabilities over revenue of $9,978.72.

Counsel for appellants, however, insist that to the revenue of the city, as found by the lower court, should be added not only the back taxes of $9,000 collected prior to September 19th which the court included, but all the back taxes amounting to $30,265.21 then in arrears, even though uncollected; and, further, not only the income from the utilities collected during the fiscal year up to September 19th, but also what would be collected on a

reasonable estimate of such income for the entire fiscal year amounting to over $50,000, and still further the license and occupational taxes which the city will collect during the fiscal year of $30,000 as per stipulation of counsel. On the other hand, counsel for appellees insist that none of these items are available, and that there should even be deducted from the revenues of the city as found by the court the sum of $7,008.68, being the net return from the utilities for the fiscal year up to September 19, 1927, on the ground that not only under an ordinance of the city, but also under the statutes, section 3290a, the revenue from the utilities municipally owned as these were can be devoted to no other purpose than those of the utilities, and that, if the revenues exceed the needs of the utilities, then it is the duty of the governing authorities of the city to reduce the rates charged customers so as to bring the revenues within the needs of the utilities. Assuming without conceding that counsel for appellees are correct in the position they take regarding this revenue from the utilities, we find that, if the sum of $7,008.68 be deducted from the revenues of the city, then the liabilities of the city as of September 19, 1927, exceeded the revenues of the city for the fiscal year as found by the lower court by the sum of $16,987.40. The contract here in controversy puts a further conceded liability on the city of $9,629, so that this contract, if permitted to be carried out, would make the total liabilities of the city as of September 19, 1927, $26,616.40, over the revenues which the court found the city had a right to rely upon for its fiscal year 1927-28, eliminating, as we have done, the revenues of the utilities up to September 19th.

The parties to this controversy entered into a stipulation, part of which reads as follows: "That the amount to be received for said fiscal year from license taxes is $30,000, but the plaintiffs (appellees) do not agree that the city could anticipate said sum of $30,000 in making up its budget."

Now if the city had the right in making up its budget to rely on this $30,000 of license and occupational taxes, then the deficit of $26,616.40, which includes the conceded liability under the contract here in question, is wiped out and a balance of slightly over $3,000 is left, and we need not inquire into the extent the city might rely upon the back taxes in arrears or upon the revenue net or gross of the municipally owned utilities.

The lower court eliminated these license and occupational taxes on two grounds: First, that there was nothing in the record to show that the city had levied any license or occupational taxes for the fiscal year in question; and, secondly, that, even if it had under the opinions of the Court of Appeals, the city could not rely upon them. It is true that the court expressed his difficulty in understanding why such taxes could not, where stabilized, be relied upon, but he took the position he did on the theory that he was bound by what this court had said in this connection in the Overall case, supra. As to the first point, we cannot concur in what the lower court found the record to show. In order to save the taking of a lot of proof, the parties to this case very sensibly entered into a stipulation, the part pertinent to the present question being quoted above. The parties specifically stated in this stipulation that "the amount to be received from the license taxes is $30,000." Fairly construed, this means that during the fiscal year the city would actually receive this amount. This being true, the stipulation necessarily means that a license or occupational tax ordinance had been passed under which, based on the experience of previous years, there was no doubt but that $30,000 would be the amount received by the city from this source. The stipulation does not read that the city *could* raise $30,000 in this fashion, but plainly and unequivocally that it *would* receive that amount during the fiscal year. We are therefore brought to the second ground relied upon by the court that these license taxes are not of such character as may be relied upon by the city in making up its budget.

As stated, the lower court felt bound by the expressions of this court in the Overall case, supra. We there said: "It may be conceded, for the purpose of this decision, that fines and license fees were too uncertain and indefinite to be estimated in the beginning of the year, as part of the income of that year. If they were so treated, we easily see how a city might inadvertently, or by clever design, exceed the constitutional limit by overestimating these sources of revenue, though based upon the experience of previous years. For, unlike taxes, their collection depends upon whether the licensees elect to take out the licenses, and whether the fines are assessed and paid. The result would be a debt without wherewith to pay it, and without the consent of the requisite voting taxpayers. Such items in futuro have been held not properly

estimable. Rice v. Milwaukee, 100 Wis. 516, 76 N. W. 341.''

As a matter of fact, it was not necessary in the Overall case that the license fees be included in the city's revenue for the fiscal years in question in order to save the contracts there in controversy. As the opinion very clearly points out, the city had ample revenues aside from these license taxes to meet its obligations. It was not necessary, therefore, to decide in that case whether license taxes should or could be relied upon by a city in making up its budget. It is plain that the court did not mean to close the question either because it expressly stated that: ''It may be conceded, *for the purpose of this decision*'' (italics ours), that license taxes to be collected in futuro could not be taken into consideration by a municipality in making up its budget. The Overall case was cited in the case of City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1044, but a reading of that opinion discloses that the question under discussion was not involved in that case. In the case of Billeter & Wiley v. State Highway Commission, supra, the question was again before the court in so far as whether or not the tax on gasoline and the state license tax on automobiles could be relied upon by the state highway commission in making up its biennial budget. Speaking to this, we said:

''It is next claimed that the tax on gasoline and the license tax on automobiles are uncertain, and the amount of revenue to be derived therefrom cannot be anticipated or approximated. We cannot concur in this. Automobiles have been in general use for many years, and the number in use shows an annual increase. Indeed, they have become indispensable, both for business and pleasure. From last year's report the number now in use can be ascertained with reasonable accuracy and there is nothing to indicate a falling off during the biennial period. The act requires a license to be taken out on all that are so used, and judging the future by the past, it is reasonable to anticipate the number will increase rather than diminish, and as the use of gasoline is largely incidental to that of motors, the same may be said of it.

''In Overall v. City of Madisonville, 125 Ky. 694, 102 S. W. 281, 31 Ky. Law Rep. 278, 12 L. R. A. (N. S.) 433, it was held that anticipated fines and

occupational license fees are too indefinite and uncertain to be considered in estimating future revenues. This is certainly correct as to fines, and it may be difficult to determine in advance how many persons will pay an occupation tax, but, as pointed out above, the use of automobiles has become stabilized, and a tax for the privilege of using them upon the public highway is standardized and the two cases are not analogous. We conclude that such taxes may properly be considered in estimating the revenues of the board.''

Although this excerpt states that it was held in the Overall case that anticipated occupational taxes could not be taken into consideration in making up a budget, we have seen that the court in the Overall case expressly meant to leave that question open for a future decision when such would be necessary to dispose of the case in which it was involved. Now the principle underlying this Billeter & Wiley case is plainly that, if a license or occupational tax is levied upon the use of a thing or occupations which have become over a period of years stabilized and where, judging the future by the past, it is reasonable to anticipate that the number will probably increase or at least not appreciably decrease, such tax may properly be considered in estimating the revenues. It is entirely proper that it should be so considered. Those who have to deal with governmental affairs, or who have made any study of them, know that experience has demonstrated that a sure and stabilized source of income are the license and occupational taxes. The sinking fund of the city of Louisville is and has been for many years maintained in large measure by license and occupational taxes. This source of income for the fund has been sure and dependable. Economic history discloses that, though A may cease to pay the license tax, B takes his place and C makes an increase. The stipulation in this case itself, when fairly construed, is that $30,000 of license taxes will be collected during the fiscal year 1927-28. This stipulation could not have been made except for the information the parties had of what had been done in the past and the confidence they had in the stability of that experience. The able trial judge expressed his inability to understand why such taxes were any less stabilized than automobile taxes, and his difficulty was indeed understandable. We are therefore of the opinion that, where the proof shows, as it does here, that an ade-

quate experience of the taxing body has demonstrated that the return on license and occupational taxes has become stabilized and dependable, such taxing body may take them into consideration in estimating its revenues. Thus the law is in harmony with practical experience.

As the city of Henderson had the right to take the $30,000 represented by these license and occupational taxes into consideration in estimating its revenues for the fiscal year 1927-28, it results that such revenues exceeded the liabilities found by the court, including the conceded liabilities incurred under the contract here in controversy, and hence such contract was not illegal.

Counsel for appellees insist however that to the $9,629 of admitted liability the city will incur under this contract there should be added the sum of $13,698.16, which they assert the city will have to pay, because the cost of improving Fifth street will far exceed 50 per cent. of the value of much of the property that abuts upon the street, and the further sum of $9,500 for gas and water mains which will have to be installed before the street is constructed. As to the last item, it is of course within the discretion of the city as to whether it will lay such gas and water mains or not. While it might be highly desirable that these should be installed before the street is constructed, yet, if the city should choose not to do so, or if it cannot do so because of lack of funds for that purpose, that would not necessarily hold up the construction of the street, and the city would have the right if it so elected to build this street without such mains. Probably the appellees are unduly alarmed about this matter, since the revenues from the utilities collected up to September 19, 1927, and which we did not consider in the revenues of the city in the foregoing part of this opinion, will almost take care of all the mains which appellees say should be installed. These mains are parts of the utilities. With reference to the item of $13,698.16, we concur in the view of the lower court that this item is too remote and speculative to be considered. There is no way to know how many, if any, of the property owners will assert any claim of spoliation when apportionments are asserted against their lots; how many will waive the claim and take advantage of the 10-year bond plan. We have frequently held that it is incumbent upon the party attacking the validity of an indebtedness of a municipality to allege and prove that the indebtedness exceeds the debt limit authorized by the Constitution. Carter v.

Krueger & Sons, 175 Ky. 399, 194 S. W. 553. This the appellees have failed to do, but have left to guesswork and speculation how much, if any at all, the city will have to pay on grounds of spoliation. This does not amount to the proof required by the authorities. Hence the lower court did not err in disregarding this item.

As we are of the opinion that as the contract here in question did not put any liability on the city of Henderson, which, when added to its other liabilities as of the date of the contract, exceeded its revenues for the fiscal year 1927-28, which it had a right to rely upon in making up its budget, such contract was not invalid, and the appellees' petition should have been dismissed.

The judgment of the lower court is therefore reversed, with instructions to dismiss appellees' petition.

Whole court sitting.