## Knepfle et al. v. City of Morehead.

Jan. 25, 1946.

418

John Wm. Heuver, Benton, Benton & Luedke and Lorimer W. Scott for appellant.

James Clay and J. H. Powers for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The principal question is the application of Section 157 of the Constitution, which limits the annual indebtedness of a city to the amount of its annual revenue, to an issue of street paving bonds of Morehead, or, specifically, to the unpaid balance. On July 19, 1927, the City directed the original construction of certain streets and drainage sewers at the expense of the abutting property. Other streets were added from time to time. Sec. 3643-1 et seq., Kentucky Statutes. An ordinance was adopted on April 10, 1928, making the apportionments and assessments, and another on August 22, 1928, providing for the issuance of the bonds and collection of the assessments for their payment in accordance with the plan and the statutes. The early financial depression upset the anticipated ease of paying for the improvements and set in motion a chain of lawsuits. Two of them reached this court. City of Morehead v. Blair, 243 Ky. 84, 47 S. W. 2d 741, and Peters v. City of Morehead, 266 Ky. 99, 98 S. W. 2d 41. We now have before us four consolidated cases in which the bondholders have sought to enforce the liability of the City for deficiencies arising from the failure of the liens on the property to yield enough to satisfy various bonds and the City's failure or alleged negligence in respect of enforcing certain liens and collecting amounts it should have collected under the law for the liquidation of the bonds. Some issues and matters of accounting were disposed of during the course of the cases while others seem to remain. The trial court, a Special Judge presiding, ruled that the bonds constituted direct obligations of the City and are unenforceable because made in violation of Section 157 of the Constitution, since the aggregate was in excess of the current income and revenue provided for the two respective years. The amount of the bonds was $84,500, and the annual revenue and income about $12,000.

Street improvement bonds issued under authority of Section 3643-5, Kentucky Statutes, now Kentucky Revised Statutes 94.620, have been of two classes with respect to the character of obligation or liability of the city issuing them. The terms of one class made the bonds a direct obligation or a pledge of the faith and credit of the city for the payment thereof, and the other only constituted the city a collecting medium. The City maintains that these are of the first class. The bond-

holders maintain that they are of the second class and that the legal liability of the City, which they seek to enforce, arises from the operation of the law and not from the voluntary assumption of a contract obligation.

The plan established by the statute authorized the construction or repair of streets and other public ways and improvements by alternative methods: at the expense of either the abutting property or the City itself, in whole or in part, as the council might determine. Section 3643-1 et seq., Kentucky Statutes (now Kentucky Revised Statutes 94.580 et seq.). Where a city has followed the plan of having the work done at the expense of abutting property, it does not assume the payment of the obligations or the bonds issued therefor under the 10-year plan. It does not increase the municipal debt, or the tax rate. The City makes the contract for the property owners and then becomes the representative of the bondholders for the collection of the bonds. Section 3643-7, Kentucky Statutes (now KRS 94.580, 94.630). The contractors or their assignees of the bonds must look alone to the fund created by the assessment and collections. German National Bank of Covington v. City of Covington, 164 Ky. 292, 175 S. W. 330, Ann. Cas. 1917B, 189; Vogt v. City of Oakdale, 166 Ky. 810, 179 S. W. 1037; Wickliffe v. City of Greenville, 170 Ky. 528, 186 S. W. 476; Castle v. City of Louisa, 187 Ky. 397, 219 S. W. 439; Turner v. Kelly, 217 Ky. 773, 290 S. W. 711; Carey-Reed Co. v. Sisco, 251 Ky. 22, 64 S. W. 2d 430; Coke v. Dowell, 281 Ky. 362, 136 S. W. 2d 3.

Obviously, it depends upon the terms of the ordinances whether the City assumes to pay for the improvements or to satisfy the bonds issued therefor as a municipal debt. Sometimes those terms do in fact obligate the city or pledge its faith and credit for the payment without limitation, although it may perhaps not have been the definite purpose that they should. Sometimes it is done deliberately. In either case, the aggregate obligation must come within the constitutional and statutory debt limitation or receive the approval of the voters. Section 3643-12, 3706, Kentucky Statutes (now KRS 94.660). Thus, in German National Bank of Covington v. City of Covington, supra, the city did pledge its faith and credit for the payment of the obligations without qualification, and the bonds were held to constitute a personal debt of the city and un-

collectible because they represented an indebtedness exceeding the revenue and income for the year in which it was created. The case involved a city of the fourth class, but the statute was substantially the same in the respect we are considering as that governing a city of the fifth class in which Morehead is placed. Schuster v. City Council of Oakdale, 180 Ky. 760, 203 S. W. 715, is a like case. On the other hand, in Castle v. City of Louisa, 187 Ky. 397, 219 S. W. 439, 440, (relating to a city of the fifth class), although the projects had received the approval of the electorate, the street improvement ordinances directed that the cost should be at the exclusive expense of the abutting property. But in providing for the construction other than the City's part (apparently the intersections), the ordinance specifically and distinctly provided that the bonds ''shall not be issued upon the faith and credit of the city of Louisa for the payment thereof, but the faith and credit of the city of Louisa shall be pledged for the payment of the sums realized upon the apportionment assessed against the property for the cost * * * and to use all legal means to enforce the collection.'' It was held that since there was no obligation to pay the bonds in any event, they did not constitute a debt of the City, hence there was no conflict with the constitutional limitations. These two cases are typical.

We turn to the record of this case for its classification. The ordinance adopted July 19, 1927, ordered the original construction of certain streets, including intersections, upon the 10-year plan as authorized by Section 3643 of the Statutes, at the exclusive cost to the owners of the property abutting on the streets. It was provided that when the work had been completed bonds should be issued for any part of the assessed cost not paid in cash by the property owners, and that: ''Said bonds shall not be a general obligation of or pledge the faith and credit of the City of Morehead, Kentucky, for payment thereof, but the said city in issuing same shall obligate only the amount of money herein provided to be paid into the street-improvement fund and shall pledge its faith and be duty bound to use all legal means available to enforce the liens against the property herein ordered to be improved, as provided by Section 3643-9, Kentucky Statutes.'' The bonds issued were in accordance with the form stipulated in the ordinance, viz:

"Know all men by these presents: That the City of Morehead, in the State of Kentucky, promises to pay the bearer the sum of $——— on the ——— day of ——— at the Morehead State Bank in the City of Morehead, Kentucky, with interest thereon at 6% per annum from the date hereof, payable annually, until the payment of said principal sum, upon presentation and surrender of the proper coupons hereto attached at said bank in Morehead, Kentucky, for the payment of which sum and interest the said City of Morehead, Kentucky, is hereby held and firmly bound to pay out of the street improvement fund out of sums realized from the apportionments and assessments against the property and lots abutting streets to be improved; by virtue of an ordinance adopted by the council of said City of Morehead on the ——— day of July, 1927, after said sums have been collected and paid into said fund, and said City of Morehead hereby pledges its faith and credit to use all legal measures to enforce the collection of said apportionments in accordance with the provisions of Section 3643-9, Kentucky Statutes. The principal sum of this bond shall be payable at maturity upon presentation and surrender of same at the office of the city treasurer in the City of Morehead, Kentucky, or at the Morehead State Bank."

It is seen that the promise and commitment of the City contained in the bonds is to pay them out of the fund to be realized from the property assessments by virtue of the ordinance if the money shall have been collected and paid into the fund, and the only pledge is that the City shall use all legal measures to enforce those collections in accordance with the statute. The instruments definitely and specifically declare that they are not the liability of the City. The obligations are in every respect like those of the City of Louisa, and held not to be a debt of the City. The bonds issued by Prestonsburg did not contain the negative statement but were held to bind the city only to the extent of the improvement fund. City of Prestonsburg v. People's State Bank, 255 Ky. 252, 72 S. W. 2d 1043.

We think the trial court was in error in applying the Covington case, supra, and holding the unpaid balance of the bonds uncollectible from the City because the debt exceeded the constitutional limitation.

Nor do we reach the same conclusion with respect to the character of the suits which the trial court conceived to be two causes of action, i. e., as being (1) to collect the bonds, in which judgment for the principal and interest was asked, and (2) to compel the City to enforce the collection of the delinquent assessments. The court applied the rule which does not permit the splitting of a cause of action, and regarded the cases as being cases might be technically construed as of all classes, merely and exclusively to recover upon the bonds. The but they have one end in view. The first suit was filed against the City and its Board of Councilmen on December 5, 1935. Although the petition set up the bonds and their nonpayment, it also listed the names of many owners of property who were delinquent in the payment of their assessments, and prayed judgment for (1) the amount of the delinquencies, and (2) a mandatory injunction to compel the defendants to enforce the collection of the defaulted assessments. From time to time other delinquents were added. The prayer for judgment on the bonds must be read as a whole and in connection with the allegations. The prosecution of the suit was tolled while the City undertook to perform its duties, such as it did in Peters v. City of Morehead, supra, which seems to have been a test case. Two other suits were filed by the same plaintiffs, holders of the bonds, in September, 1942, to recover judgment against the City for deficiencies which arose by reason of the pleas of the property owners of spoliation and certain settlements made by the City without suit for less than the assessments. The fourth suit was something of an omnium-gatherum and prayed for an accounting of each assessment and recovery against the City for its derelictions and negligent failure to comply with the statute and ordinances requiring that all assessments be placed upon the tax list and collected accordingly into the street improvement fund. Of necessity the bonds were set up as the basis or terms of liability. As stated, all the suits were consolidated. The practice seems to have been proper. Cf. City of Prestonsburg v. People's State Bank, 255 Ky. 252, 72 S. W. 2d 1043. Eventually most of the facts were covered by stipulation of the parties. We think the court should have considered the entire record and made disposition of the issues on the merits.

In reaching this decision we have also disagreed

with the trial court in his further opinion that the Council could not indirectly bind the City to pay the bonds without thereby creating an indebtedness, or commit the City indirectly to pay an obligation in excess of the constitutional limitations where it could not do so directly; nor that when the contractor voluntarily accepted the bonds in payment for his work, all former contracts and liabilities merged into the bonds, which thereby became a debt of the City, and behind which the holders of the bonds cannot go. We do not think that is right.

When a city chooses to avail itself of the terms of the statute, it assumes the responsibility and duty of complying with its terms and with the terms of the ordinances. It binds itself to make proper assessments and use due diligence to collect the bonds, particularly to do affirmatively all those things required by the statute and assumed by the ordinance; also to pay deficiencies arising from a failure of the liens to produce the respective apportionments. Those were the obligations of the City of Morehead in this instance.

The consolidated cases eventuated into questions of liability (1) for deficiencies where the assessment exceeded 50% of the value of the property; (2) where the City had accepted less than the full assessment; and (3) where the City failed to collect the assessments or prosecute suits for the enforcement of the liens. Back of all these issues lay the charge that the City had not duly complied with the statute and its ordinance to place the assessments upon the tax roll and collect the same currently as taxes. That liability has been frequently recognized. See Cohen v. City of Henderson, 182 Ky. 658, 207 S. W. 4, 5; City of Prestonsburg v. People's State Bank, supra.

(1) Section 157 of the Constitution prohibits a city or other taxing district from becoming ''indebted'' in any year for an amount exceeding the income and revenue provided for that year and declares, ''any indebtedness contracted in violation of this section shall be void.'' This indebtedness is one created by contract or voluntarily incurred in such manner as would otherwise bind the municipality to pay. It does not include a liability imposed by law for what is done without right or what is done negligently. O'Bryan v. City of Owensboro, 113 Ky. 680, 68 S. W. 858, 69 S. W. 800; Overall

v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 12 L. R. A., N. S., 433; City of Louisville v. Parsons, 150 Ky. 420, 150 S. W. 498; City of Frankfort v. Fuss, 235 Ky. 143, 29 S. W. 2d 603; City of Prestonsburg v. People's State Bank, supra; City of Catlettsburg v. Citizens' National Bank, 234 Ky. 120, 27 S. W. 2d 662; City of Covington v. McKenna, 242 Ky. 452, 46 S. W. 2d 760.

(2) It is true that the provisions of the statute with reference to the method of assessment of property and the collection like city taxes did not at the time these ordinances were adopted contain the provisions that "the City Council shall provide for the payment of any such excess by the City"—having reference to the excess over one-half the value of the property. That provision came into the statute by the amendment or re-enactment of Section 3643-7, Kentucky Statutes, by an Act of 1928, Chapter 98, page 370. But even before that amendment the City was responsible for the excess over the amount which could be validly levied against the abutting property where it was less than one-half of such apportionment. W. T. Congleton Company v. City of Williamsburg, 253 Ky. 704, 70 S. W. 2d 376; James C. Wilson & Co. v. City of Ravenna, 268 Ky. 232, 104 S. W. 2d 965. There was no money liability of the City for the deficiencies in the beginning. That arose when they developed after the exhaustion of legal remedies to collect the full assessments. Cf. Boll v. City of Ludlow, 234 Ky. 812, 29 S. W. 2d 547; Howard v. Town of Loyall, 284 Ky. 233, 144 S. W. 2d 502. The commitment of the City by virtue of using the authority of the statute as well as of executing its ordinances pertaining to the improvement was lawful in the beginning. Being so then, it continues legal to the end. The money liability arose without design or, apparently, reasonable anticipation. Cf. Swinburne v. City of Newport, 297 Ky. 820, 181 S. W. 2d 421, relating to unexpected deficits in annual revenue. Whether or not a city in adopting this plan could be so extravagant in its estimate of value of the abutting property that it could be said to have acted in bad faith or should have reasonably anticipated that there would be spoliation or excess over 50%, which added to its direct liability for street intersections or against its own property, would exceed the debt limit, and so constitute an unconstitutional obliga-

tion, we are not called upon here to express an opinion. However, see Premier Construction Company v. Kimmell, 230 Ky. 439, 20 S. W. 2d 77, in which the execution of a contract for street improvement was sought to be enjoined, and it was held that an alleged anticipated excess or spoliation was too speculative for the court to say that the debt limit of the city would be exceeded. After the City has obtained the improved streets and the contractor or his innocent assignees, the bondholders, have put up their money to pay for them, the conditions ought not to be scrutinized too closely in the light of subsequent events. The situation is to be viewed as it was in the beginning and not through hind-sight. At any rate, the unreasonableness has not been made to appear in this case.

The judgment is reversed for consistent proceedings.