Berdick P. ROBERTSON and Lena Robertson, His Wife, Suing Individually and As Representatives of a Class of Property Owners in Danville, Kentucky, Appellants,

v.

CITY OF DANVILLE, Kentucky, Appellee.

Court of Appeals of Kentucky.

June 22, 1956.

Pierce Lively, Danville, for appellants.

Cornelius W. Grafton, Wyatt, Grafton & Grafton, Louisville, Joe G. Davis, Wesley Gilmer, Jr., Danville, for appellee.

CAMMACK, Judge.

This action was brought by property owners to enjoin the City of Danville from constructing a sewer under the provisions of House Bill 389, which was passed, with an emergency provision, by the General Assembly at its 1956 Regular Session. The Act became effective when it was signed by the Governor on February 29th.

The Act, which is optional, and applicable to all cities, differs materially in several respects from the traditional front-footage plans for the assessment of the costs of certain "special benefit" improvement projects against abutting property owners. However, it does embody some features akin to those found in the Statutes providing for drainage districts and flood wall projects, which authorize the assessment of costs on the basis of "benefits derived." It provides for financing public improvement projects, including sewers, of all municipalities, when they so choose, by levying annual improvement benefit assessments on the basis of the assessed values of the benefited properties. There is no provision authorizing an affected property owner to pay his assessment in cash and thus avoid payment of interest over the period of the bond issue. There is a provision for the annual levy of an assessment sufficient to pay each year the bonds and interest coupons as they mature. The Act further provides that the bonds shall not constitute an indebtedness of the city; and that they and the interest thereon are payable exclusively from the proceeds of the annual improvement assessments levied on the benefited properties. Section 14 provides that the benefited property shall consist of all real property abutting upon both sides of the improvement project and that no benefited property shall be exempt from assessment. It is provided further that, for purposes of the Act, all public school property shall be deemed to be property owned by the State, as provided by KRS 162.010; and that in the case of the State, the amount of the annual assessment shall be certified by the city treasurer to the Department of Finance, "which shall thereupon draw a warrant upon the State Treasurer, payable to the city treasurer, for the amount thereof, and the State Treasurer shall pay the same out of any money in the State Treasury not otherwise appropriated." One of the reasons for passing the Act was to increase the marketability of bonds. Rivers v. City of Owensboro, Ky., 287 S.W.2d 151.

The appellants, plaintiffs below, asked also that the court declare the rights of the parties and declare specifically that House Bill 389 is invalid and void, as being in vi-

olation of Sections 157, 158 and 184 of the Kentucky Constitution. They raised the questions of due process of law and equal protection of the law provisions of both the Kentucky, § 14, and United States, Amend. 14, Constitutions. By answer, the appellee, defendant below, prayed the court to declare that House Bill 389 is valid, legal and constitutional, and within the Constitutions of Kentucky and United States, and that the City acted validly, in accordance with House Bill 389. The City asked that the complaint be dismissed.

On the basis of the pleadings, exhibits, evidence heard, and oral arguments, the court upheld the validity of House Bill 389 and the actions of the City thereunder. He adjudged that (1) the "improvement benefit assessments" to be levied annually upon the "assessed value basis" against only those properties which abut upon and will be benefited by the sewer improvement project are not taxes, but are true assessments for benefits received; (2) the special obligation bonds will not constitute an indebtedness of the City, and, therefore, do not require approval by the voters at an election held for that purpose, as contemplated by Section 157 of the Constitution; (3) the lack of provision for payment of the entire assessment in cash by any property holder does not constitute a deprivation of any constitutional right of the property holder, or result in unequal treatment, or unequal benefits of the laws, as contemplated by the Constitutions of Kentucky and of the United States; (4) the provisions requiring that any litigation by a property owner be initiated within thirty days after the publication of the "Second Ordinance" are not unreasonable; and (5) the provisions requiring that assessments levied against school properties be paid from general funds of the Commonwealth not allocated to school purposes or otherwise appropriated, are lawful and do not constitute a violation of Section 184 of the Constitution of Kentucky.

On this appeal, the appellants contend that (1) the "improvement benefit assessment" is actually an ad valorem tax; (2) the statute, and ordinances passed pursuant thereto, should provide an option for the property owners to pay their assessment in cash rather than in installments, over a period of years; (3) the bond issue will constitute an indebtedness of the City of Danville within the meaning of Sections 157 and 158 of the Kentucky Constitution, and, therefore, should be submitted to the people for a vote; (4) the provisions of the Act authorizing the assessment of school properties violate Section 184 of the Kentucky Constitution.

A special assessment for benefits is not a tax within the constitutional concept of the word "tax" and is not subject to constitutional limitations on taxation. See Francis v. City of Bowling Green, 259 Ky. 525, 82 S.W.2d 804; Vogt v. City of Oakdale, 166 Ky. 810, 179 S.W. 1037; Gosnell v. City of Louisville, 104 Ky. 201, 46 S.W. 722, 20 Ky.Law Rep. 519. See also Rosewater, Special Assessments, p. 92.

The fact that special assessments for benefits are computed on an ad valorem basis does not alter or destroy their character as such. See Sovereign Camp W. O. W. v. Lake Worth Inlet District, 119 Fla. 782, 161 So. 717, 719, 99 A.L.R. 1482, and cases cited therein. It was held in Armstrong v. Sewer Improvement Dist. No. 1, Tulsa County, 201 Okl. 531, 199 P.2d 1012, 1015, 207 P.2d 917, that assessments levied on an ad valorem basis on all property in the sewer improvement district for construction of trunk line sewers are "special assessments" and not "ad valorem taxes." A study of these cases, and the authorities cited therein, shows that an improvement benefit assessment, though levied on an ad valorem basis, is not an ad valorem tax. See Rosewater, Special Assessments, p. 121. The foregoing discussion is based upon the primary concept of "ad valorem" which is—"to the value."

Historically, a special benefit assessment was imposed on land only. Such

levies were upheld on the theory that the special benefit assessment be commensurate to the benefit received, and that the benefit from a public improvement project accrues to the land itself. See Rosewater, Special Assessments, pp. 105, 132, 134. The Act now being considered provides an option for choosing the method of apportioning the special benefit assessment. The assessment may be made on a front-foot basis or on an assessed value basis, Section 3. An assessment on a front-foot basis must necessarily be levied against land only. It would be inconsistent, at least, to say that the other alternative, that of a levy on an assessed value basis, should include the value of land plus the value of the improvements thereon. Therefore, it is our view that the Act, which provides in Section 14 "that the benefited property shall consist of all real property abutting on both sides of the project," means that land only, and not land plus improvements, shall be the basis of the special assessment, regardless of which method of apportionment is used. Since an option is provided and a city may adopt, from time to time, either of the plans, the impact of the assessment under either plan should fall on the same character of property. Any other interpretation would permit discrimination between property owners in a given city.

The Act contains no provision for lump sum assessment against a given piece of property as constituting its share of the total costs of the project. Instead, each year a levy is made against all of the benefited properties at whatever rate may be necessary to produce the principal and interest requirements for that year, based upon the assessed values as they then exist. Since there is no fixed sum assessed against any piece of property at the outset, it is impossible to afford to the property owners an opportunity to pay in cash.

Installment payment of special benefit assessments, without any provision for payment in cash at the outset, is not a new concept in Kentucky law. In the case of Morgan v. Figg, 1914, 162 Ky. 5, 171 S.W. 416, 417, it was held that under section 3706, Kentucky Statutes, relating to improvement of streets in towns of the sixth class, it was within the power of the board of trustees of the town to contract for an improvement either on a cash basis or on a deferred payment plan, or to give to the owners the option of paying either in cash or on a deferred payment plan. In the Morgan case the Court said:

"* * * The act provides for assessing the cost against the abutting property. It also provides for the issuing of bonds on the ten-year plan. When the latter plan is adopted, improvement taxes are divided into ten annual installments, and bear interest from date. In view of the latter provision, it is insisted that, when the first plan is followed, payment of the assessments must necessarily be in cash. This, however, is a mere inference. The statute is silent upon the subject. It contains no provision requiring payment to be made in cash. In the absence of such provision, we conclude that it is within the power of the trustees to contract for the improvement either on a cash basis or on a deferred payment plan, or to give to the property owner, as was done in this case, the option to pay either in cash or on a deferred payment plan. * * *"

Certainly, if the legislature can grant authority to a municipality to authorize installment payments, it can itself exercise such authority.

In the case of City of Dawson Springs v. Hamby, 273 Ky. 523, 117 S.W.2d 204, this Court, in approving a ten-year installment payment plan, held that under a statute, Kentucky Statutes 1922, sections 3643-7, 3643-10, authorizing cities of the fifth class to prescribe for payment of a street improvement by abutting property owners on the ten-year plan only, provisions in the ordinance of a city of the fifth class purporting to permit property owners to exercise an option as to whether the im-

provement should be made on the ten-year plan were surplusage. It was held that the city council possessed no authority to take any step contrary to the express provisions of the statute conferring upon it the only authority which it possessed. No authority was possessed by the City Council of Dawson Springs to prescribe any other method of payment by abutting property owners for the cost of street improvements, except upon the ten-year plan.

Special annual assessments levied on the basis of assessed valuation of properties were upheld by us in Miller v. City of Ashland, 310 Ky. 680, 221 S.W.2d 620, an injunction proceeding, wherein KRS, Chapter 104, was upheld in authorizing the issuance of assessment bonds for flood wall purposes. The pertinent part of the statute under consideration on that question follows:

> "104.110. The sum necessary to be raised annually for the sinking fund and maintenance or operation fund shall be assessed against the property benefited in the proportion that the assessed value of each parcel or item of property for city or county taxation shall bear to the whole assessed value as shown by the tax records of the city; * * *."

There is sufficient precedent in the decisions of this Court to uphold the proposed plan for installment payments. We can see no reason to depart from these precedents.

The Act provides in Section 12 that each special assessment bond shall bear on its face the statement that it does not constitute an indebtedness of the City within the meaning of the Constitution; and that the bonds and interest shall be payable only from the proceeds of annual improvement assessments levied on benefited property. It also provides that the City shall become directly liable to the bondholders for any deficiencies which may arise from its fail-

ure to pursue all remedies lawfully available in the collection of such improvement assessments. The appellants claim that, under these provisions, the bonds will constitute an indebtedness of the City of Danville within the meaning of Sections 157 and 158 of the Constitution, and that therefore a vote of the people assenting to such indebtedness is necessary before the issuance of the bonds.

These provisions of the Act do not constitute an indebtedness of the City, as contemplated in Sections 157 and 158 of the Constitution. Rather, they fall squarely on the principle announced by us in the case of Knepfle v. City of Morehead, 301 Ky. 417, 192 S.W.2d 189, wherein we said that the pledge of the city was limited to the commitment to employ all available measures for the enforcement and collection of special assessments; and that no "indebtedness" was created within the meaning of the applicable sections of the Constitution. Since no indebtedness of the City of Danville is created by the bonds, no vote of the people is required prior to the issuance thereof.

The Act provides that public school property shall be assessed for special improvement benefits. It directs that public school property shall be deemed to be property owned by the State, as provided by KRS 162.010, and provides for payment of the annual levies against it from the State Treasury out of moneys not otherwise appropriated. The appellants contend that these provisions violate Section 184 of the Constitution, which provides that any sum which may be produced by taxation or otherwise for purposes of common school education shall be appropriated to the common schools, and to no other purpose.

There is a long line of cases construing Section 184 to mean that a school board can not be held liable for an assessment for public improvements. The case of City of Louisville v. Leatherman, 99 Ky. 213,

35 S.W. 625, 626, contains the following statement:

"* * * Moreover, it would seem that the appropriations of any part of the fund, or the taxes which have been devoted to the purposes of the common school system, to the payment either of general taxation for the support of the state government, or of special assessments to pay the cost of street improvements, would be an appropriation thereof to another purpose than that of the school system, and therefore forbidden by section 184 of the constitution. * * *"

Similar conclusions were reached in the cases of Board of Education of Spencer County v. Spencer County, Levee, Flood Control, & Drainage Dist. No. 1, 313 Ky. 8, 230 S.W.2d 81; Wilson v. Board of Education of City of Russellville, Logan County, 226 Ky. 476, 11 S.W.2d 143; and Board of Education of City of Covington v. Board of Trustees of Public Library of Covington, 113 Ky. 234, 68 S.W. 10, 24 Ky.Law Rep. 98. In each of these cases, an attempt was made to force a school board to pay a special assessment from funds appropriated exclusively for purposes of common school education. However, House Bill 389 does not attempt to require payment from a common school appropriation, but rather provides that payment shall be made from any funds which may happen to be in the State Treasury and have not been appropriated for some other purpose.

It is beyond question that the project under consideration is a public one, regardless of the manner in which its costs might be met. Indeed, it could be financed from general tax funds, by a voted bonded indebtedness, by revenue bonds, or by a special benefit assessment such as we have under consideration. See Dyche v. City of London, Ky., 288 S.W.2d 648; Knepfle v. City of Morehead, 301 Ky. 417, 192 S.W.2d 189.

Prior to 1953, the legislature was limited in the method by which it could distribute funds in aid of education by Section 186 of the Constitution which provided that such distribution be made on the per capita basis. By amendment approved by the voters in 1953, the per capita clause of Section 186 was deleted, leaving the distribution of school funds to legislative discretion, limited only to the standard that such distribution must be in aid of education. In considering the Act before us in the light of Section 186 as amended, it could well be argued that, even if the money paid by the State as the apportionment of a special improvement benefit assessment against school property is considered money appropriated in aid of education, it is within the legislative discretion to specify the purposes of its use.

KRS 162.010 reads in part as follows:

"The title to all property owned by a school district is vested in the Commonwealth for the benefit of the district board of education * * *."

By House Bill 1, which, incidentally, was passed at the First Extraordinary Session subsequent to the enactment of the Act presently under consideration, the acquisition, sale, maintenance and disposition of state property and buildings was made the responsibility of the Department of Finance. Section 7 of House Bill 1 places specific duties upon the Department of Finance regarding expenditures of State funds on designated improvements, including sewers and streets. The Department might very well direct, through appropriate means, that the arm of the State (the local school board) for which it holds the beneficiary title to school property participate in the procedural steps pertaining to the development of the project proposed under House Bill 389, to the end that public funds be safeguarded properly. The necessity for such action is obvious in order that the State may take full advantage of the provisions for participating in the formulation of the project, the making of protests, and in appealing, for affected property owners under House Bill 389. Likewise, when

school property is assessed specially, as provided in Section 13, the local school board could be made the representative of the State in any review of the assessment.

For the reasons stated, the judgment, as interpreted, is affirmed.